754 F.2d 1499
 Ted SCOTT, Jack Leverenz, John R. Miller, Tom Arima and
Dennis Neumann, on behalf of themselves and all
others similarly situated, Plaintiffs-Appellants,
v.
GULF OIL CORPORATION, Defendant-Appellee.
 No. 83-6423.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 6, 1984.
Decided March 6, 1985.
 
 John C. McCarthy, Claremont, Cal., for plaintiffs-appellants.
 Kenneth Oder, Los Angeles, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED, ANDERSON, and FERGUSON, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Former employees of Gulf Oil Corporation brought suit against Gulf on state-law contract and tort claims arising from Gulf's alleged failure to provide severance pay that was due them, and from Gulf's alleged improper negotiations with Thrifty Oil Corporation over the terms of their future employment. The basis of jurisdiction in district court was diversity of citizenship. The district court dismissed the action for failure to state a claim on which relief could be granted, holding that all the claims were preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Secs. 1001-1461 (1982). The dismissal was without prejudice to such rights as plaintiffs might have under ERISA. Plaintiffs appealed.
 
 
 2
 We affirm in part, reverse in part, and remand.
 
 I.
 FACTS
 
 3
 Plaintiffs are 101 former salaried, non-union employees of Gulf Oil Corporation. They worked at Gulf's oil refinery in Santa Fe Springs, California. Gulf sold the refinery to Thrifty Oil Corporation on July 31, 1983. Gulf arranged with Thrifty for Thrifty to hire the former Gulf employees who had worked at the refinery. All but one or two of the plaintiffs accepted employment with Thrifty.
 
 
 4
 The plaintiffs brought this diversity action in which they assert the following four claims against Gulf:
 
 
 5
 1. "Breach of Employment Agreement." Plaintiffs allege that Gulf "expressly and impliedly promised, orally and in writing" to pay severance pay to plaintiffs upon termination of their employment with Gulf, at the rate of two weeks salary for each year of employment with Gulf, but failed to do so.
 
 
 6
 2. "Violation of Public Policy." Plaintiffs allege that Gulf, without their knowledge or authorization, negotiated the terms of their future employment with Thrifty and "agreed privately with Thrifty to coerce and deceive [plaintiffs] into accepting employment with Thrifty on terms less favorable than the terms of their employment with defendant Gulf."
 
 
 7
 3. "Breach of the Duty to Act Fairly and in Good Faith." This count is based on the same allegations as counts 1 and 2, but recharacterizes the acts alleged in those counts as a breach of Gulf's "duty implied in the employment agreement to deal fairly and in good faith" with the plaintiffs.
 
 
 8
 4. "Fraud and Breach of Fiduciary Duties." Plaintiffs allege that Gulf defrauded them by representing falsely in writing that they were not entitled to severance pay and that the benefits they would receive from Thrifty were equal to those that they were receiving from Gulf.
 
 
 9
 The district court, in effect, held that each of the plaintiffs' claims was preempted by ERISA. We hold, however, that ERISA preempts all of plaintiffs' claims except insofar as they allege the loss of benefits that plaintiffs would have accumulated while employed by Thrifty were it not for Gulf's alleged improper negotiation of the terms of their employment with Thrifty.
 
 II.
 THE PURPOSE AND SCOPE OF ERISA
 
 10
 ERISA is a remedial statute designed to protect the interests of employees in pension and welfare plans, see Shaw v. Delta Airlines, 463 U.S. 85, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983), and to protect employers from conflicting and inconsistent state and local regulation of such plans, see id. 103 S.Ct. at 2901, 2904. The former purpose is achieved through requirements for reporting, disclosure, participation rights, vesting of rights to benefits, funding, fiduciary responsibilities, and claims procedures. See 29 U.S.C. Secs. 1021-1145. The latter purpose is achieved through the preemption, with a few exceptions not relevant here, of all state laws relating to employee pension and welfare benefit plans. See id. Sec. 1144.
 
 
 11
 ERISA creates federal causes of action for recovery of benefits due under pension and welfare plans, see 29 U.S.C. Sec. 1132(a)(1)(B), and for breach of fiduciary duty by plan fiduciaries, see id. Secs. 1109, 1132(a)(2). In appropriate circumstances, extracontractual and punitive damages may be obtained under the latter cause of action. See Russell v. Massachusetts Mutual Life Insurance Co., 722 F.2d 482, 489-92 (9th Cir.1983).
 
 
 12
 ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans. Instead, Congress intended for the courts, borrowing from state law where appropriate, and guided by the policies expressed in ERISA and other federal labor laws, to fashion a body of federal common law to govern ERISA suits. See Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496, 1499 (9th Cir.1984); Terpinas v. Seafarer's International Union, 722 F.2d 1445, 1447 (9th Cir.1984); Amato v. Bernard, 618 F.2d 559, 567 (9th Cir.1980).
 
 
 13
 ERISA's preemption clause declares that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...". 29 U.S.C. Sec. 1144(a) (1982) (emphasis added). The preemption extends to state common-law causes of action as well as regulatory laws. See, e.g., Russell, 722 F.2d at 487-88.
 
 
 14
 Preemption by ERISA thus turns initially on whether Gulf's alleged promise to provide severance pay is an "employee benefit plan" within the meaning of ERISA.
 
 III.
 
 15
 IS GULF'S ALLEGED PROMISE TO PAY SEVERANCE PAY AN "EMPLOYEE
 
 
 16
 BENEFIT PLAN" UNDER ERISA?
 
 
 17
 "Employee benefit plans" under ERISA include "employee pension benefit plans" and "employee welfare benefit plans." 29 U.S.C. Sec. 1002(3) (1982). While the parties agree that Gulf's alleged promise to provide severance pay is not an "employee pension benefit plan," they disagree vigorously over whether the promise is an "employee welfare benefit plan." For the promise to be an "employee welfare benefit plan," severance pay must be considered an "employee welfare benefit," and the promise must constitute a "plan" within the meaning of ERISA. We shall examine each of these requirements separately.
 
 
 18
 A. Severance Pay As An Employee Welfare Benefit.
 
 
 19
 ERISA defines employee welfare benefits to include several enumerated benefits, including medical, disability, unemployment, and vacation benefits, 29 U.S.C. Sec. 1002(1)(A), and, in addition, "any benefit described in [29 U.S.C.] section 186(c)," id. Sec. 1002(1)(B). Section 186(c) concerns, inter alia, money paid to trust funds "for the purpose of pooled vacation, holiday, severance, or similar benefits." 29 U.S.C. Sec. 186(c)(6).
 
 
 20
 An ERISA regulation promulgated by the Department of Labor states that the effect of ERISA's reference to section 186(c) "is to include within the definition of 'welfare plan' those plans which provide holiday and severance benefits, and benefits which are similar." 29 C.F.R. Sec. 2510.3-1(a)(3). The key point for our purposes is that the regulation does not limit the definition to those severance benefits which are pooled or which are funded by a trust fund. The regulation's interpretation of the statute is reasonable, because the reference to section 186(c) is in the form of an addition to a list of types of benefits, the rest of which are listed without regard to their source of funding or whether or not they are pooled. On the basis of the regulation, therefore, this court, in Blau v. Del Monte Corp., 748 F.2d 1348, 1352 (9th Cir.1985), held that severance pay is an employee welfare benefit under ERISA. Accord, Donovan v. Dillingham, 688 F.2d 1367, 1371 & n. 4 (11th Cir.1982), (en banc ); Petrella v. NL Industries, 529 F.Supp. 1357, 1361-62 (D.N.J.1982); Pinto v. Zenith Radio Corp., 480 F.Supp. 361 (N.D.Ill.1979), aff'd 618 F.2d 110 (7th Cir.1980).
 
 
 21
 Appellants argue that, notwithstanding ERISA's incorporation of severance benefits by reference to section 186(c), severance pay should nonetheless be considered a "payroll practice," rather than an employee welfare benefit, when it is paid out of an employer's general assets rather than out of a special fund. Appellants rely on regulations that define as payroll practices medical leaves, holidays, and vacations, when they are funded out of an employer's general assets. See 29 C.F.R. Secs. 2510.3-1(b)(2)-(3).
 
 
 22
 The short answer to appellant's argument is that the regulations that define payroll practices are quite specific and clearly do not cover severance pay. They refer to payment of compensation for periods of time when an employee is absent for medical or psychiatric reasons, id. Sec. 2510.3-1(b)(2), on vacation, holiday, military duty, or jury duty, id. Secs. 2510.3-1(b)(3)(i)-(iii), in training, id. Sec. 2510.3-1(b)(3)(iv), or on sabbatical leave, id. Sec. 2510.3-1(b)(3)(v). They do not refer to payments upon termination of employment.
 
 
 23
 There is good reason for distinguishing severance pay from the designated payroll practices. The practices described in the regulations require disbursements of funds easily analogized to ordinary wages, and the payments involved invariably take place during the term of employment. Severance pay, in contrast, requires an extra disbursement of funds, above and beyond ordinary wages, at or after the termination of employment. Further, an employer who, as in this case, terminates a large number of employees at once, may be faced with an extremely large severance liability. For these reasons, the danger that an employer may, because of lack of funds, default on an obligation to provide severance pay is greater than the danger of default on an obligation to provide medical leaves or vacations. This type of default is a central concern of ERISA. See 29 U.S.C. Sec. 1001(a) (congressional finding that "owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered"). Therefore, it is reasonable for the Labor Department regulations to include severance pay, even when funded out of an employer's general assets, as an employee welfare benefit under ERISA, while excluding medical leaves, vacations, etc., as "payroll practices" when similarly funded.
 
 
 24
 It follows that we see no reason to depart from Blau. Severance pay is an employee welfare benefit within the meaning of ERISA.
 
 
 25
 B. ERISA "Plan" .
 
 
 26
 The plaintiffs next fall back and assert that the severance pay allegedly promised them by Gulf is not a "plan" within the meaning of ERISA.
 
 
 27
 Here our steps are less assured. ERISA does not contain a clear definition of the word "plan." The definition of "employee welfare benefit plan" itself uses the word "plan": a "plan, fund, or program ... established or maintained ... for the purpose of providing" the specified benefits. See 29 U.S.C. Sec. 1002(1). Although ERISA contains numerous requirements that a plan must adhere to--a written instrument, named fiduciaries, public reports, etc., see id. Secs. 1021-1031, 1101-1114--these requirements are not part of the definition of "plan."
 
 
 28
 Failure to meet these requirements does not exempt Gulf from coverage by ERISA. Such failure merely indicates a failure by Gulf to comply with ERISA. Were such failure to exempt Gulf from coverage by ERISA, employers could escape ERISA's coverage merely by failing to comply with its requirements. This much we have already decided in Blau. We stated that "[o]nce established, ERISA operates to protect an employee's interest in the welfare benefit program regardless of whether the employer complies with the administrative and reporting requirements detailed under ERISA." Blau, 748 F.2d at 1352.
 
 
 29
 We recognize that here, unlike in Blau, there is the possible absence of a written instrument.[1] We agree with the Eleventh Circuit, however, that the existence of a written instrument is not a prerequisite to ERISA coverage. See Donovan v. Dillingham, 688 F.2d 1367, 1372 (11th Cir.1982) (en banc ). "Once it is determined that ERISA covers a plan, the Act's fiduciary and reporting procedures do require the plan to be established pursuant to a written instrument, [citations omitted], but clearly these are only the responsibilites of administrators and fiduciaries of plans covered by ERISA and are not prerequisites to coverage under the Act." Id. at 1372. Accord, California Hospital Assoc. v. Henning, 569 F.Supp. 1544, 1545-46 (C.D.Cal.1983); Petrella v. NL Industries, 529 F.Supp. 1357 (D.N.J.1982) (entitlement to severance benefits established by pattern of practice enforceable under ERISA).
 
 
 30
 We also agree with Donovan, however, that a mere allegation that an employer or employee organization ultimately decided to provide an employee welfare benefit is not enough to invoke ERISA's coverage. See 688 F.2d at 1372-73. Such an allegation fails to allege the "establishment" of a plan. Something more is needed. In the context of this case, however, a great deal more is alleged.[2] Without passing on the minimum that must be alleged to justify preemption by ERISA, we find that the complaint in this case contains allegations that, if true, would enable a reasonable person to "ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." Donovan, 688 F.2d at 1373. That is clearly a sufficient allegation of the establishment of a plan.
 
 IV.
 
 31
 DOES ERISA PREEMPT PLAINITFFS' STATE LAW CLAIMS?
 
 
 32
 ERISA provides, as already pointed out, that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. Sec. 1144(a). The preemptive effect of this clause is broad, but not all-encompassing. Lane v. Goren, 743 F.2d 1337, 1339 (9th Cir.1984). We have held that ERISA preemption extends to state common-law causes of action as well as state regulatory statutes, and that claims brought under state-law doctrines that do not explicitly refer to employee benefit plans are nonetheless preempted when the claims arise from the administration of such plans. See Blau v. Del Monte Corp., 748 F.2d 1348, 1356 (9th Cir.1985) (breach of contract, fraud, and deceit); Russell v. Massachusetts Mutual Life Insurance Co., 722 F.2d 482, 487-88 (9th Cir.1983) (breach of contract, breach of covenant of good faith and fair dealing, breach of fiduciary duty, and intentional infliction of emotional distress); Lafferty v. Solar Turbines International, 666 F.2d 408 (9th Cir.1982) (breach of contract). The principle manifested in these cases is that preemption of state law claims by ERISA depends on the conduct to which such law is applied, not on the form or label of the law. See also Shaw v. Delta Airlines, 463 U.S. 85, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (ERISA preemption not limited to state laws specifically designed to affect employee benefit plans). Therefore, in determining whether each of plaintiffs' claims is preempted by ERISA, we inquire as to whether the conduct challenged by each claim was part of the administration of an employee benefit plan.
 
 
 33
 A. First Claim: "Breach of Employment Agreement."
 
 
 34
 Plaintiffs' first claim asserts no more nor less than that plaintiffs were denied benefits due them under the terms of an employee welfare benefit plan. The claim is therefore preempted by ERISA.
 
 
 35
 B. Second Claim: "Violation of Public Policy."
 
 
 36
 Plaintiffs' second claim presents difficulties, however. Plaintiffs allege that Gulf, without their consent, negotiated with Thrifty over the terms of plaintiffs' future employment with Thrifty, and that Gulf joined with Thrifty to coerce them into accepting a new employment contract with Thrifty that contained terms less favorable to them than their contract with Gulf. Plaintiffs allege that, as a result of such unauthorized negotiations and such coercion, they lost both severance benefits that they had accumulated while working for Gulf, and benefits that they would have accumulated while working for Thrifty. We shall refer to the latter as "prospective benefits."
 
 
 37
 Insofar as the second claim alleges the loss of benefits that plaintiffs had already accumulated while working for Gulf, it, like the first claim, is one for benefits under an employee welfare benefit plan and is preempted by ERISA. Insofar as it alleges the loss of prospective benefits, however, we find that it is not preempted.
 
 
 38
 The claim for prospective benefits does not allege the denial of benefits under a benefit plan; rather, it alleges that Gulf's tortious actions prevented the existence of such a plan in plaintiffs' employment with Thrifty. It does not allege the violation of duties created by any welfare plan; rather it alleges the violation of Gulf's duties as a past employer. The conduct giving rise to the claim was the negotiation of an employment contract which prevented the existence of an employee benefit plan. The claim does not raise any issues concerning the matters regulated by ERISA, namely, the administration, reporting, disclosure, funding, vesting, and enforcement of benefit plans. The issues raised by the claim are no different than those that would be raised by a claim that Gulf had conspired with Thrifty to force the plaintiffs to accept, for example, lower wages, a claim that would clearly not be preempted by ERISA.
 
 
 39
 The claim for prospective benefits is closely analogous to the claim in Freeman v. Jacques Orthopaedic and Joint Implant Surgery Medical Group, 721 F.2d 654 (9th Cir.1983). There an employee brought an ERISA action alleging that his employer fraudulently induced him to waive his right to participate in a pension plan. We held that, although the plan was covered by ERISA, the action could not be maintained under ERISA's civil enforcement provision because that provision entitles only a "participant or beneficiary" to bring suit. The plaintiff, having waived participation in the plan, was not a participant or beneficiary. We further held that, although the plaintiff might have been entitled under the state law of fraud to damages equal to the benefits he would have received had he participated in the plan, such damages were not themselves a "benefit under a plan" and therefore could not be awarded in an ERISA action.
 
 
 40
 Freeman controls plaintiffs' claim for prospective severance benefits. According to the allegations in that portion of their complaint, plaintiffs are not participants in, or beneficiaries of, a severance pay plan administered by Thrifty. Thrifty has no such plan and that is the heart of the matter. To preempt plaintiffs' state-law claim for prospective benefits under these circumstances would leave them without an avenue of redress for the wrongs that they have alleged.
 
 
 41
 We therefore hold that plaintiffs' second claim is not preempted insofar as it alleges the loss of severance benefits that plaintiffs claim they would have accumulated during the course of their employment with Thrifty were it not for Gulf's allegedly tortious behavior.
 
 
 42
 C. Third Claim: "Breach of the Duty to Act Fairly and in Good Faith."
 
 
 43
 The plaintiffs' third claim adds no factual allegations to those of the first two claims. It merely asserts that the same acts alleged in the first two claims constituted a breach by Gulf of an implied state-law duty to act fairly and in good faith. Insofar as this claim relates to the denial of severance benefits that plaintiffs allegedly accumulated in the course of their employment with Gulf, this claim is preempted by ERISA. See Russell, 722 F.2d at 487-88. For the same reasons discussed above in connection with plaintiffs' second claim, however, we find that the third claim is not preempted insofar as it relates to prospective benefits.
 
 
 44
 D. Fourth Claim: "Fraud and Breach of Fiduciary Duty."
 
 
 45
 Our disposition of the fourth claim follows that of the second and third. In their fourth claim, plaintiffs allege that Gulf misled them by representing to them that they were not entitled to severance pay from Gulf, and that the terms of their employment with Thrifty were "substantially as favorable" as those with Gulf. Plaintiffs further allege that, as a result of such misrepresentations, they accepted terms of employment with Thrifty that did not include severance pay. As with the second and third claims, we find that this claim is preempted insofar as it relates to the loss of severance benefits allegedly accumulated during the course of plaintiffs' employment with Gulf, see Blau, 748 F.2d at 1356, but is not preempted insofar as it relates to the loss of benefits that the plaintiffs allege they would have accumulated during the course of their employment with Thrifty.
 
 V.
 CONCLUSION
 
 46
 Our affirmance of the district court's dismissal without prejudice of the state-law claims that we have found to be preempted by ERISA leaves the plaintiffs free to assert those claims under ERISA. Plaintiffs should be given leave to amend their complaint to add ERISA claims to those claims that we have found not to be preempted. For this purpose, and for further proceedings on the nonpreempted claims, we remand this case to the district court.
 
 
 47
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Plaintiffs' complaint alleges that Gulf promised "orally and in writing" to provide severance pay. In their brief, however, plaintiffs assert that "the claim ... is based primarily on oral representations ... and on previous conduct of defendant."
 
 
 [2]
 Paragraph 10 of the complaint, which paragraph was incorporated in each of the complaint's four counts, reads as follows:
 During the employment of plaintiffs and class with defendant Gulf Oil Corporation defendant Gulf expressly and impliedly promised, orally and in writing, to pay and has paid severance pay benefits to those employees whose employment was terminated involuntarily for reasons other than for cause. Such benefit was based upon the employee's salary and length of service with defendant Gulf and was generally a sum equal to two weeks of salary for each year of employment with defendant. For example, an employee with 13 years of service and a salary of $30,000 would be entitled to severance pay of $15,000. Defendant promised to pay and paid such benefits as an inducement to its employees to remain in its employment and to refuse offers of other employment, as an incentive to perform satisfactory service to defendant and to avoid discharge for cause, and upon termination to compensate the employees for such satisfactory services rendered. In so acting, defendant Gulf sought to and did achieve a stable work force of loyal, generally satisfied and industrious employees, including plaintiffs and class. Based in part on such promises, and defendant's personnel policies, customs and practices relating to severance pay, plaintiffs and class continued their employment with defendant and did not seek or accept other employment. Defendant Gulf therefore became and is now obligated to pay plaintiffs and class compensation and wages for earned severance pay up to the termination of their employment on July 31, 1983, in individual sums readily calculable and totalling approximately $2,700,000.