Donald J. FARR, Plaintiff,

v.

U.S. WEST, INC., et al., Defendants.

Civ. No. 91–1186–MA.

United States District Court,
D. Oregon.

July 30, 1992.

Leslie Wellman and Shari Clark, Wellman & Murray, P.C., Portland, OR, for plaintiff.

R. Erick Johnson, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, D. Ward Kallstrom, Lillick & Charles, San Francisco, CA, for defendants.

## OPINION

MARSH, District Judge.

Plaintiff filed this action against his former employer and his Pension Benefit Committee claiming that defendants misrepresented the tax benefits of an early retirement program. In his complaint, plaintiff asserts a claim for violation of fiduciary duties under ERISA and five separate state law claims for breach of contract, breach of fiduciary duties, fraud, negligent misrepresentation and a statutory wage claim. The parties have now filed cross-motions for partial summary judgment on the limited issue of whether plaintiff's state law claims are preempted by ERISA. For the reasons that follow, plaintiff's motion for partial summary judgment is denied and defendants' motion for partial summary judgment is granted.

## BACKGROUND

The parties agree that the U.S. West Pension Plan is a "tax-qualified" defined benefit retirement plan governed by Section 401(a) of the Internal Revenue Code of 1986 and ERISA. Paragraph 4.9 of the Plan anticipates that there may be instances in which certain benefits may exceed I.R.C. § 415 limits:

> "The portion of any pension or survivor annuity with respect to any participant in excess of the applicable [I.R.C. § 415 limit] shall be paid by the Participating Company which last employed such participant, directly to the participant or beneficiary entitled thereto and shall be charged to its operating expense accounts when and as paid."

The "5 + 5 Amendment" to paragraph 4.9 of the Plan was adopted in January of 1986 as part of an effort to streamline the management workforce by encouraging early retirement. Under the Amendment, eligible plan participants could add five years to their age and five years to their period of service for the purpose of calculating their Pension Plan benefits. Eligible participants who retired in January of 1990 could elect to receive a special "lump sum" benefit. Plaintiff was a participant in the U.S. West deferred compensation pension plan who retired under the "5 + 5 Amendment" to the Pension Plan and elected to receive a lump sum payment in excess of his normal pension benefits under the Plan.

## DISCUSSION

The general allegations which form the basis of plaintiff's ERISA claim are identical to the basis for his state law claims— essentially, plaintiff contends that the Plan Committee breached fiduciary duties by failing to timely notify plan participants who

were eligible to participate in the 5 + 5 Amendment of the unfavorable tax consequences of electing to receive the lump sum distribution. Plaintiff contends that he selected the lump sum in reliance upon defendants' representation that such a payment could be "rolled over" into a tax deferred venue, such as an IRA account, and later learned that a portion of the payment was ineligible for rollover and subject to taxation upon distribution.

Plaintiff does not dispute that the basis of his complaint relates to the Committee's administration of a portion of an otherwise qualifying ERISA benefit plan. Plaintiff nevertheless contends that his state law claims are not preempted by ERISA because paragraph 4.9 of the Plan and the 5 + 5 Amendment constitute a separate "excess benefit plan" and thus, are exempt from ERISA.

Section 514(a) of ERISA provides that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This preemption clause is "deliberately expansive and designed to establish pension plan regulations as exclusively a federal concern." *Olson v. General Dynamics Corp.*, 960 F.2d 1418, 1420 (9th Cir.1991) *citing Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). In *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Supreme Court examined the breadth of ERISA's preemptive force and explained that Congress sought to foreclose states, through the exercise of their common law powers, from developing different substantive standards applicable to the same employer conduct regarding the tailoring of plans. Congress used equally broad language in defining "state law," under § 1144(c)(1), and the Supreme Court has held that a state law "relates to" an employee benefit plan if it has a connection with or reference to such a plan, either directly or indirectly. *Ingersoll–Rand*, 498 U.S. at 137–40, 111 S.Ct. at 482–83.

However, section 514(a) excepts certain areas from the scope of federal law, including certain "excess benefit plans." § 1003(b)(5).

Section 1002(36) of Title 29 defines an "excess benefit plan" as follows:

"a plan maintained by an employer solely for the purpose of providing benefits for certain employees in excess of the limitations on contributions and benefits imposed by section 415 of the IRC ... To the extent that a separable part of a plan (as determined by the Secretary of Labor) maintained by an employer is maintained for such purpose, that part shall be treated as a separate plan which is an excess benefit plan."

(emphasis added).

Defendants do not dispute that a separate excess benefit plan is an exception to the broad preemptive reach of ERISA, but contend that the excess benefit program referenced in paragraph 4.9 of the Plan and the 5 + 5 Amendment are inextricably intertwined with the Plan and are not separable. Plaintiff does not dispute that the Secretary of Labor has not determined that paragraph 4.9 and the 5 + 5 Amendment constitute a "separate plan." Thus, the issue that I must decide is whether the excess benefit provisions in defendants' Plan constitute a separate excess benefit plan which is exempt from ERISA. The parties agree to all material facts regarding the Plan and Amendment and hence, summary judgment is clearly appropriate to determine the legal effect of these agreed facts.

The parties have not cited, nor have I been able to find, any decision which squarely answers the issue in this case. However, there are cases which provide some guidance in applying the ERISA excess benefit exemption statute to the facts in this case. In a very similar set of circumstances, the Seventh Circuit Court of Appeals rejected a claim that an employer's oral promise to provide an early retirement severance program in excess of IRC § 415 limits fell within the ERISA excess benefit exemption. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073 (7th Cir.1992). Although the court held that ERISA preempted plaintiff's claims insofar as the alleged oral representations relative to excess severance and bonus benefits worked to modify written portions of the qualified plan, the Court held that, even if plaintiff

could establish the existence of the program, it would nevertheless be preempted by ERISA because plaintiff's claim ultimately "related to" administration of the Plan. *Id.,* at 1077.

Similarly, in *Petkus v. Chicago Rawhide Mfg. Co.,* 763 F.Supp. 357 (N.D.Ill.1991), plaintiff originally filed an action in an Illinois state court asserting a claim for pension benefits under a qualified plan and a separate claim for excess pension benefits under a "supplemental executive retirement plan." The action was removed on the basis of ERISA preemption and, thereafter, plaintiff amended his complaint, withdrew his first claim for benefits under the qualified plan and filed a motion to remand the remaining claim against the supplemental plan. However, unlike the facts in this case, there is no evidence that the supplemental excess benefit plan was managed and administered by the same pension plan committee or that it was created pursuant to a provision within the plan itself.

■ In assessing whether the excess benefit provisions constitute a separate "plan," I note the existence of several factors which support separability. First is the existence of a separate funding source—normal pension benefits are paid by the trust, whereas the excess benefits paid out under the 5 + 5 plan are paid directly by the employer from its operating assets.[1] Second, payments under the Amendment exceed I.R.C. § 415 limits on "qualified" plans. Third, the Plan Administrators used a lower discount rate to determine benefits paid under the Amendment (5.25%) than was used to determine benefits under the Plan (8%).

■ However, I must consider also these distinctive characteristics in light of the overall Plan. Several aspects of the plan tend to show that the Amendment was simply part of the Pension Plan. First, I note that there is only one plan document which includes reference to an excess benefit provision. Second, and most significant, is the fact that the Plan and Amendment were administered by a single committee which is charged with management of a comprehensive pension benefit program. Furthermore, the legislative history of ERISA reveals that Congress anticipated that certain benefits distributed under an otherwise "qualifying" plan might exceed IRC § 415 limits but that such payments would not necessarily result in a "separate plan" exempt from ERISA:

> "The conferees intend that, for tax purposes, additional benefits may not be paid from a qualified plan. However, for purposes other than tax law, a qualified plan and a plan providing additional benefits may be treated as one plan by the employer."

H.Conf.Rep. No. 93–1280, 93d Cong., 2d Sess. 346–47 (1974), U.S.Code Cong. & Admin.News 1974, pp. 4639, 5126.

Finally, I note that Congress clearly intended that ERISA should work to facilitate consistent administration and distribution of employee benefits and to avoid potentially inconsistent burdens on employers. In this case, unlike the claim for benefits in *Petkus,* plaintiff received the lump sum payment described in the 5 + 5 Amendment. Instead, plaintiff challenges the Committee's failure to adequately apprise him of the tax consequences of participation and, thus, plaintiff's claim is directed against the overall administration of a Plan which covers thousands of employees in fourteen states. The potential for conflicting or inconsistent obligations on

---

1. Defendants cite *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1502–03 (9th Cir.1985) for the proposition that the source of pension benefits—i.e. whether they come from a trust or from an employer's assets is "irrelevant" to the issue of ERISA preemption. Although defendants' citation is not incorrect, it is somewhat misleading. In *Scott,* the Court merely found that the ERISA regulations do not limit the definition of severance benefits to those which are pooled or funded by a trust. *Id.,* at 1502. The court held that a severance pay program funded from employer assets still constituted an ERISA welfare plan.

*Id.,* at 1503. However, the court did not address, nor was it confronted with the issue of whether the severance pay program was a *part of* a qualified ERISA plan or exempt as an excess benefit plan. I emphasize this distinction because I consider the fact that the 5 + 5 program in this case is funded from a *different* source than other benefits under the plan is a factor which tends to show separateness. Consistent with *Scott,* I do not feel that this factor, standing alone, is determinative to a finding of separability under § 1003(b)(5).

the U.S. West pension committee by application of various state common law theories underscores the underlying rationale of preemption. Therefore, even if I were to find that the 5 + 5 Amendment and paragraph 4.9 of the Plan constitute a separate plan exempt from ERISA under § 1003(b)(5), I would find that, because plaintiff's claims in this case challenge *administrative* actions by ERISA plan fiduciaries, his claims nevertheless "relate to" an ERISA plan and are therefore preempted. *See e.g. Scott,* 754 F.2d at 1505 ("key" is whether plaintiff's claims "relate to" administration of employee benefit plan).

## CONCLUSION

Based on the foregoing, I find that plaintiff's claims against defendants "relate to" an ERISA Plan and therefore, claims two through six are preempted. Accordingly, plaintiff's motion for partial summary judgment is denied and defendants' cross-motion for partial summary judgment is granted.