Donald J. **FARR;** Gregory H. **Ishmiel;** Rod W. **Tracy;** Willis L. **Rader;** Joseph T. **Dean;** Robert **Heuser;** Jeanette P. **Neufeld, Plaintiffs/Appellants,**

v.

**U.S. WEST COMMUNICATIONS, INC.; U.S. West, Inc.; U.S. West Management Pension Plan; U.S. West Employee's Benefit Committee, Defendants/Appellees.**

No. 96–36051.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1997.

Decided June 15, 1998.

Leslie L. Wellman, Portland, OR, for plaintiffs/appellants.

D. Ward Kallstrom, Lillick, McHose & Charles, San Francisco, CA, for defendants/appellees.

Before: NOONAN and HAWKINS, Circuit Judges, and MERHIGE,* District Judge.

Opinion by Judge MERHIGE; Concurrence by Judge NOONAN; Concurrence by Judge HAWKINS.

* Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

MERHIGE, District Judge:

This case arises under ERISA, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. Seven former employees of U.S. West, Inc. appeal the district court's summary judgment dismissal of their action alleging that U.S. West breached its fiduciary duties under ERISA by misrepresenting facts relating to the tax consequences of an early retirement program, providing misleading or incomplete information about potential adverse tax consequences, and failing to allow the employees to rescind their early retirement. On remand from Plaintiffs' prior appeal, the District Court granted summary judgment for Defendants, holding the following: Plaintiffs' state law claims are preempted by ERISA; individual relief is available under ERISA; Defendants did not breach their fiduciary duties to Plaintiffs; assuming *arguendo*, that Defendants did breach their fiduciary duties, Plaintiffs were not damaged thereby; and the monetary damages sought by Plaintiffs are not recoverable as "other appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). We hold the following: in light of *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), Plaintiffs' state law claims are preempted by ERISA; and although Defendants breached their fiduciary duties to Plaintiffs, the damages Plaintiffs seek are nonetheless not recoverable as "other appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Thus, we affirm in part, reverse in part, and affirm the judgment.

## I.

Plaintiffs were long-term employees of Defendants U.S. West, Inc. and U.S. West Communications. In January 1990, Plaintiffs chose to retire under an amendment to the U.S. West Management Pension Plan known as the "5 + 5 program," which created early retirement incentives for many long-term employees. Under the 5 + 5 program, Plaintiffs chose to receive their accrued pension benefits in a lump sum. Plaintiffs allege that U.S. West did not tell them that those lump sum distributions in excess of the amount qualified to be rolled over into Individual Retirement Accounts ("IRAs") would be taxed immediately.

On Dec. 15, 1989, J. Thomas Bouchard, Senior Vice President and Chief Human Resources Officer at U.S. West, sent a letter to employees eligible to retire under the 5 + 5 program. Attached to the letter was a 15–page booklet providing an overview of the program. The booklet included a section entitled "Tax Considerations Affecting Choice of Distribution" which purported to "highlight[ ] the basic federal tax rules" relevant to the choice between taking the pension benefits in a lump sum or in a series of monthly installments. The booklet warned plan participants that the tax consequences of the available options were "very complex" and that employees "should consult with your tax advisor." For those who were not age 50 before 1986, the booklet provided the following information on lump sum distributions: "Distribution fully included in taxable income received except to the extent rolled over to another IRSqualified plan or IRA within 60 days." For those who were age 50 before 1986, the booklet provided the following information on lump sum distributions: "All or part of [lump sum] distribution may be rolled over to another qualified plan or an IRA within 60 days without any current tax liability." The booklet did not say that only qualified portions of the lump sum distributions could be rolled over, and that everything else would be taxed.

The Dec. 18, 1989 issue of *US West Today,* a publication circulated to U.S. West employees, contained an interview with Charles Kamen, the Executive Director of Human Resources for U.S. West, with the heading "Lump–Sum option clarified." In response to questions regarding the tax consequences of the lump sum option, Kamen stated, "Obviously, the lump-sum payment will provide you with a large amount of money that you can control and invest however you like. For some, the lump sum may also offer significant tax advantages."

On Jan. 17, 1990, several Pension Plan representatives and U.S. West managers participated in a live telecast presentation concerning the 5 + 5 program broadcast to

eligible employees. The telecast featured a panel of U.S. West officers and upper management employees. Before the telecast aired, two of the panelists discussed the possibility of disclosing the potential tax problems with lump-sums that could not be rolled over into IRAs, but decided to withhold this information. During the broadcast, Kamen mentioned that a "qualified portion of the lump-sum distribution" could be rolled over into an IRA, but did not explain what he meant by "qualified portion."

Each of the Plaintiffs retired under the 5 + 5 program, elected to receive their accrued benefits in lump sums, attempted to roll over all of their lump sums into IRAs, but discovered that only qualified portions of those sums could be rolled over, and the rest was promptly taxed. On Feb. 6, 1990, after U.S. West management realized that a significant number of people were in this predicament, it held a meeting to discuss possible responses. The plan actuary suggested reducing the discount rate from 8% to 5.25% on the excess portion of the lump sum to mitigate unfavorable tax consequences. The U.S. West Employees' Benefits Committee adopted this proposal.

Plaintiffs subsequently submitted claims to the Plan for additional benefits to offset their unexpected tax liability. The Benefits Committee denied their claims.

Plaintiffs allege that U.S. West breached its fiduciary duty to them under ERISA § 404 by providing them with incomplete, false, and misleading information regarding the tax consequences of their lump sum distributions.[1] Plaintiffs additionally sued U.S. West under Oregon state law for, *inter alia,* fraud and negligent misrepresentation.

## II.

On the first hearing of the case, the district court awarded U.S. West summary judgment on both the ERISA and the state law claims. First, the district court held that even if U.S. West had breached a fiduciary duty to Plaintiffs, Plaintiffs would not be entitled to the relief they sought because ERISA does not provide for individual recovery for breaches of fiduciary duties. *Farr v. U.S. West, Inc.,* 815 F.Supp. 1364, 1374–75 (D.Or.1992). The district court also held that, even if U.S. West had a fiduciary duty to Plaintiffs, it had not breached that duty in this case. The court further held that the lost tax benefits sought by Plaintiffs are extra-contractual damages which are not "other appropriate equitable relief" authorized under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). *Id.* at 1373–76. Finally, the district court held that Plaintiffs' state law fraud and negligent misrepresentation claims were preempted by ERISA. *Id.* at 1363.[2]

Plaintiffs appealed both the preemption ruling and the grant of summary judgment for Defendants. On appeal, we took the following actions: reversed the district court's decision that Plaintiffs' state law claims are preempted by ERISA, holding that the alleged misrepresentations did not "relate to" the Pension Plan; affirmed the district court's entry of judgment for Defendants on the ERISA claim on the ground that ERISA precluded an individual claim for relief for breach of fiduciary duty; did not address the district court's factual findings that Defendants did not breach their fiduciary duties; and did not address the district

---

1. Section 404(a), as codified in 29 U.S.C. § 1104(a), provides in pertinent part:
   (a) Prudent man standard of care
   (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
   (A) for the exclusive purpose of:
   (i) providing benefits to participants and their beneficiaries; and
   (ii) defraying reasonable expenses of administering the plan;
   (B) with the care, skill, prudence, and diligence under the circumstances then prevailing

that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims....

2. The district court held that the 5 + 5 program did not constitute a separate "excess benefit plan" exempted from ERISA preemption under 29 U.S.C. § 1002(36). *Farr v. U.S. West,* 815 F.Supp. 1360, 1363–64 (D.Or.1992). We agree with the district court that the 5 + 5 program did not constitute a separate "excess benefit plan" under § 1002(36).

court's conclusion that the tax benefit losses sought by Plaintiffs are not recoverable under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). *Farr v. U.S. West, Inc.*, 58 F.3d 1361 (9th Cir.1995).

After remand, the parties filed cross-motions for summary judgment and briefed the issue of whether *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), decided after we had remanded the case, required re-examination of this Court's mandate. On September 3, 1996, the district court took the following actions: granted Defendants' motion for summary judgment on Plaintiffs' state law claims, holding that the state law claims were preempted by ERISA under the reasoning of *Varity;* stated that pursuant to *Varity*, beneficiaries may seek individual relief pursuant to ERISA's §§ 1109 and 1132(a)(3); and granted summary judgment for Defendants on Plaintiffs' fiduciary breach claim under ERISA based on its previous determination that Defendant had not breached its fiduciary duties.[3]

We review to determine whether (1) *Varity* negated this Court's mandate on remand that ERISA does not preempt the former employees' state law claims; (2) Defendants breached their fiduciary duties under ERISA by not informing the employees about the potential tax consequences of lump sum distributions; and (3) the remedies sought by the Plaintiffs are available under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

### III.

■ ERISA § 514(a) preempts state law claims that "relate to" employee benefit plans. *See* 29 U.S.C. § 1144(a). A state law claim "relates to" an employee benefit plan if it has a connection with or reference to such a plan. *See California Div. Of Labor Standards Enforcement v. Dillingham Constr., Inc.*, 519 U.S. 316, 117 S.Ct. 832, 837, 136 L.Ed.2d 791 (1997). In the first appeal, we held that Plaintiffs' state law claims for breach of contract, fraud, and misrepresentation did not "relate to" the Plan because the alleged misrepresentations did not arise out of Plan administration, but were made by

U.S. West in its employer capacity and thus, were not preempted by ERISA. *See Farr*, 58 F.3d at 1366–67. The district court did not follow this mandate on remand because it believed that the Supreme Court's decision in *Varity*, which expanded the parameters of "plan administration," altered our preemption analysis. After considering *Varity*, the district court again held that Plaintiffs' state law claims were preempted by ERISA.

■ Whether ERISA preempts state law is a question of law reviewed *de novo*. *See Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1316 (9th Cir.1997). We agree with the district court's reasoning regarding the impact *Varity* has on ERISA preemption analysis. Our previous conclusion that the Defendants' statement regarding the tax consequences of plan benefits did not relate to plan management was premised upon a narrower understanding of plan management than that articulated by the Supreme Court in *Varity*. Under the Court's reasoning in *Varity*, the tax consequences of the 5 + 5 plan clearly "relate to" plan administration because they are part of the overall mix of information relied upon by Plaintiffs in making their decisions to participate in the plan. Thus, we affirm the district court's conclusion that Plaintiffs' state law claims are preempted pursuant to § 514(a).

### IV.

■ The district court granted summary judgment to Defendants, holding that Defendants had not breached their fiduciary duties under ERISA. A grant of summary judgment is reviewed *de novo*. *See Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.1997); *see also Williams v. Caterpillar, Inc.*, 944 F.2d 658, 661 (9th Cir.1991)(holding the *de novo* standard of review of summary judgment on appeal applies as much to an ERISA action as to any other civil action). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *See Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir.1997). We must

---

**3.** In its initial grant of summary judgment, the district court indicated that its opinion was also its findings and conclusions, in lieu of a bench trial.

determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Covey,* 116 F.3d at 834.

ERISA requires a "fiduciary" to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." ERISA § 404(a), 29 U.S.C. § 1104(a). Although the Supreme Court in *Varity* declined to reach the question of whether ERISA imposes a duty on fiduciaries to disclose truthful information on their own initiative, or in response to employee inquiries, 116 S.Ct. at 1075, we have previously held that a "fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *Barker v. American Mobil Power Corp.,* 64 F.3d 1397, 1403 (9th Cir.1995) (citation omitted). Defendants' failure to explain to Plaintiffs in either written or verbal communications the potentially negative tax consequences they might face by choosing to participate in the 5 + 5 retirement plan was a breach of Defendants' fiduciary duties.

For example, the December 18, 1989 booklet, "Supplement to the Summary Plan Description" (SSPD), and the "Summary of Material Modification" to the Plan failed to include facts known to Defendants about the possible adverse tax consequences relating to lump sum distributions. The booklet also stated that "[a]ll or part" of the lump sum distribution could be rolled over into an IRA without current tax liability. The booklet failed to include an explanation that only qualified portions of the lump sum distributions could be rolled over without incurring current tax liability and an explanation of who might be adversely affected by the limitation. These omissions in the summary plan description were misleading for employees making the important decision of whether to exercise the 5 + 5 retirement option,

and therefore, violate ERISA's requirement that "[t]he format of the summary plan description must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries." 29 C.F.R. § 2520.102–2(b).

The December 18, 1989 issue of *US West Today* contained an interview with Kamen under the headline "lumpsum option clarified," which stated that "[f]or some, the lump sum may also offer significant tax advantages." The article did not clarify that for others the lump sum would present significant tax disadvantages. A January 15, 1990 issue of *US West Today* contained an extensive discussion of the 5 + 5 program, including information about the way the lump-sum benefit was calculated. The article contained no mention of the Internal Revenue Code § 415[4] problem or the adverse tax consequences. In a January 17, 1990 live in-house television broadcast intended to explain the 5 + 5 offer to employees, panelists decided beforehand to withhold the potential tax problems with lump sums. In that telecast, Kamen stated that a "qualified portion of the lump-sum distribution" could be rolled over into an IRA, but failed to explain what he meant by "qualified portion."

As the district court noted, Defendants do not dispute that there was no information provided explaining the § 415 limitations on the portions of lump sum distributions that were eligible to be rolled over to another qualified plan or an IRA without current tax liability, even though they were well aware of the adverse impact § 415 would have on some employees. Kamen, an employee of U.S. West, confirmed that a deliberate decision was made to leave the information out to avoid "confusing" the issues for other employees.

■ The record shows that one of the reasons the Defendants excluded the information about the § 415 limitations was to save money. A report written in November 1989 indicated that it would be costly to the

---

4. Section 415 of the Internal Revenue Code of 1986, 26 U.S.C. § 415 provides the maximum contributions and benefits which may be provided under retirement plans qualified under 26 U.S.C. § 401(a). The § 415 limits for the pension plan are determined after considering certain contributions which have been made for a participant under other pension plans and any defined contribution plans sponsored by the employer.

company to provide such information, and estimated that 690 employees would receive amounts exceeding § 415 limitations. This, of course, is not a valid justification for withholding information. As the Supreme Court stated in *Varity*, "to participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense, is not an act 'solely in the interests of the participants and beneficiaries.'" *Varity*, 116 S.Ct. at 1074.

Defendants argue that they fulfilled their fiduciary duties by advising participants on several occasions, including in the summary plan description, to consult with a tax advisor because of the complexity of the tax consequences. We agree that the Benefits Committee did not have a duty to provide Plaintiffs with individualized notice of all the ways the tax laws would impact each of their individual distributions. As we have noted, "to require summary plan descriptions to discuss the application of general rules to a wide range of particular situations and thereby provide specific advice to employees on how to shape their conduct to fit the rules, would undermine the statute...." *Stahl v. Tony's Bldg. Materials, Inc.*, 875 F.2d 1404, 1408 (9th Cir.1989). "A summary plan description, therefore, cannot violate ERISA merely because it could have included language more specifically discussing the precise situation of a particular beneficiary." *Id.*

However, although we have held that it is enough if an employee is alerted "to recognize that certain events or actions could trigger a loss of benefits," *id.*, Defendants failed to provide sufficiently detailed information to employees to alert them of the precise nature and likelihood of such a possibility. For Plaintiffs to be sufficiently on notice that the potential adverse tax consequences would affect them, Defendants had an obligation to explain the nature of the potential problem and, in general terms, who might be negatively affected. For example, Defendants should have explained to employees the difference between excess lump sum benefits that cannot be "rolled over" into IRAs and are therefore subject to immediate taxation and qualified benefits which can be "rolled

over" without immediate taxation. Defendants' fiduciary duties also required them to explain more specifically what categories of employees would be likely to be affected by the § 415 limitations, such as employees expecting larger amounts of financial benefits. With this information, individual employees would be alerted that they themselves might face adverse tax consequences and could make informed decisions about whether they needed to seek professional tax advice.

In sum, the ERISA fiduciary duty includes the common law duty of loyalty, which requires fiduciaries to deal fairly and honestly with beneficiaries. *See Varity*, 116 S.Ct. at 1075. Defendants had a duty to provide thorough and accurate information explaining the 5 + 5 retirement option that it offered to entice employees to retire. Instead, Defendants provided incomplete and misleading information about the potential tax consequences of accepting that option. Given the expanded notion of the fiduciary duties of plan administrators articulated by the Supreme Court in *Varity*, we conclude that Defendants' failure to inform Plaintiffs about the potential tax consequences of lump sum distributions constitutes a breach of their fiduciary duties, which caused individual harm to the Plaintiffs who suffered adverse tax consequences.

### V.

Although Defendants breached their fiduciary duties and Plaintiffs were damaged thereby, no remedy is available to Plaintiffs under ERISA. Plaintiffs seek the following remedies for the alleged damage caused by U.S. West's breach of its fiduciary duties: (a) a surcharge equal to all the taxes they have paid and will pay on their excess benefit distributions; (b) reinstatement with back and front pay; (c) punitive damages; and (d) prejudgment interest and attorneys' fees. Plaintiffs assert that these remedies are among those permitted under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

Plaintiffs' claim arises under section 404 of ERISA, 29 U.S.C. § 1104. That section enumerates the affirmative duties of a plan fiduciary, and section 409, 29 U.S.C. § 1109,

provides for liability for any breach of those fiduciary duties. ERISA § 502, 29 U.S.C. § 1132, provides the remedial provisions of ERISA and outlines the causes of action which may be maintained by plan participants and actions subject to enforcement by the Department of Labor. Section 502(a) is divided into three categories. The first category, a claim for benefits under 502(a)(1), permits plan beneficiaries and participants to compel recovery of specific benefits due under the terms of a plan. The second category, a claim for breach of fiduciary duty under Section 502(a)(2), provides that a participant or the Secretary may pursue an action to obtain "appropriate relief" under § 409.[5] The third category, Section 502(a)(3) is the "catchall" provision, which provides for injunctive or "other appropriate equitable relief" under 502(a)(3) to redress a violation of "any provision of this subchapter or the terms of the plan." [6] Plaintiffs' requests for remedies for Defendants' alleged breach are brought exclusively under § 502(a)(3). Plaintiffs concede that they have no remedy under sections 502(a)(1) or (a)(2).

The district court declined to allow Plaintiffs to recover their tax benefit losses, holding that lost tax benefits are "extra-contractual" and thus do not fall within "other appropriate equitable relief" available under section 502. *See Farr*, 815 F.Supp. at 1375–76. During the time that has elapsed since the district court addressed this issue, the Supreme Court has held that the language "appropriate equitable relief" under § 502(a)(3) does not authorize suits for money damages against nonfiduciaries who knowingly participate in a fiduciary's breach of duty. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 257–63, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). We later held, based on *Mertens*, that monetary relief in the form of compensatory damages is also unavailable under § 502(a)(3) to remedy a fiduciary's breach, finding that "the status of

the defendant, whether fiduciary or nonfiduciary, does not affect the question of whether damages constitute 'appropriate equitable relief' under § 502(a)(3)." *McLeod v. Oregon Lithoprint Inc.*, 102 F.3d 376, 378 (9th Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 1823, 137 L.Ed.2d 1030 (1997). We further held that "the *Varity* opinion does not alter the holding in *Mertens* that compensatory damages are unavailable under § 502(a)(3)." *Id.* at 379.

Thus, binding precedent compels us to conclude that Plaintiffs may not recover their tax benefit losses under § 502(a)(3), despite the fact that that conclusion leaves Plaintiffs without a remedy for an alleged breach of fiduciary duty under ERISA. Similarly, Plaintiffs may not recover punitive damages under § 502(a)(3), as we have previously held that § 502(a)(3) does not provide for compensatory or punitive damages. *See Concha v. London*, 62 F.3d 1493, 1504 (9th Cir.1995) (citing *Mertens*, 508 U.S. at 260–63, 113 S.Ct. 2063).

Plaintiffs also seek reinstatement with back and front pay. The district court concluded that there is no authority, statutory or otherwise, which would permit a court to provide reinstatement as a remedy for a violation of a breach under § 404 via §§ 409 and 502, and that even if there were, reinstatement was not a viable alternative. *See Farr*, 815 F.Supp. at 1364. Because reinstatement is clearly not a viable alternative in the present case, given the amount of time that has passed since Plaintiffs left the company, we need not decide whether reinstatement would be available under § 502(a)(3). That conclusion, in turn, renders Plaintiffs' request for front and back pay moot. Thus, we affirm the district court's conclusion that reinstatement would not be an appropriate remedy.

5. Section 502(a)(2), as codified in 29 U.S.C. § 1132(a)(2), provides: "(a) Persons empowered to bring a civil action. A civil action may be brought... (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."

6. Section 502(a)(3), as codified in 29 U.S.C. § 1132(a)(3), provides in pertinent part: "A civil action may be brought... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations."

In conclusion, although Defendants breached their fiduciary duties to Plaintiffs, Plaintiffs nonetheless are not entitled to any of the remedies they seek under ERISA.

## VI.

For the foregoing reasons, we affirm in part and reverse in part the opinion of the district court, and affirm the judgment.

**AFFIRMED.**

NOONAN, Circuit Judge, concurring:

The decision is compelled by Ninth Circuit precedent but I believe we should ask the circuit to take the case en banc and distinguish *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). *Mertens* dealt with damages to be obtained from a non-fiduciary. *Id.* at 251, 113 S.Ct. 2063. When it is a fiduciary that has breached its trust, of course the remedy must be equitable. What else could a court making a trustee true to its trust be doing except providing equitable relief?

If we are unable to do equity here, I agree with Judge Hawkins that Congress should right the wrong.

HAWKINS, Circuit Judge, specially concurring:

The very best thing that can be said about what happened to the U.S. West employees who elected to participate in this early retirement program is that it represented a gross violation of fiduciary duty. U.S. West officials knew there would be significant tax consequences to some of those who elected to receive their benefits in a lump sum. They even talked about it before a televised presentation to employees and affirmatively decided to withhold the information from plan beneficiaries. This left in place an earlier statement from U.S. West that electing lump sum payments might "offer significant tax advantages."

It was particularly important that employees considering early retirement know this information, as the form for electing the program also required an election with respect to lump sum or periodic payment. Employees, in other words, could not elect early retirement and then take some time to seek outside advice whether lump sum or periodic payment made the best economic sense. But these employees were not even told what the phrase "qualifying amount" meant or that amounts that did not "qualify" would be taxed as ordinary income in the year received. One suspects that if the CEO of U.S. West were eligible for this program, he or she would have been told. If fiduciary duty means anything, it is that the information the greatest in a group needs to know must also be told to the least.

In *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court stated: "it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy." *Id.* at 1078. Yet that is exactly, according to the Supreme Court interpretation of ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), what Congress has done. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

We have faithfully applied *Mertens* and its restrictive interpretation of § 502(a)(3). *See FMC Medical Plan v. Owens*, 122 F.3d 1258, 1261 (9th Cir.1997); *McLeod v. Oregon Lithoprint Inc.*, 46 F.3d 956, 960 (9th Cir.1995); *Waller v. Blue Cross of California*, 32 F.3d 1337, 1339 (9th Cir.1994). Although money damages are available under § 502(a)(3) in the form of restitution, such a remedy does not help Plaintiffs here. I recognize that ERISA is a complex set of interrelated rules that create and also limit beneficiaries' rights and remedies. But as this case so aptly demonstrates, perhaps Congress should rethink the limited remedies provided in § 502 and afford a greater range of relief to beneficiaries when a fiduciary so clearly breaches its duties.