903 F.2d 1232
 58 USLW 2736, 12 Employee Benefits Ca 1557
 John D. RUOCCO, on behalf of himself and as the
representative of a class of persons similarly
situated, Plaintiff-Appellee,
v.
BATEMAN, EICHLER, HILL, RICHARDS, INCORPORATED, John R.
Bolin, Theodore Prush, Defendants-Appellants.
 No. 88-6655.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1990.
Decided May 18, 1990.
 
 1
 Craig B. Jorgensen, Jon L. Rewinski, Louis W. Karlin, Kindel & Anderson, Los Angeles, Cal., for defendants-appellants.
 
 
 2
 J. Michael Hennigan, Richard M. Callahan, Jr., Hennigan & Mercer, Los Angeles, Cal., for plaintiff-appellee.
 
 
 3
 Appeal from the United States District Court for the Central District of California.
 
 
 4
 Before THOMPSON and TROTT, Circuit Judges, and MARSH, District Judge.*
 
 MARSH, District Judge:
 
 5
 This action involves claims by John Ruocco, on behalf of himself and current and former Bateman, Eichler, Hill, Richards, Inc., et al., ("BEHR") employees who participated in BEHR's long-term disability plan between January 1, 1982 and December 30, 1984. The plaintiff class claims that BEHR violated its fiduciary duties, the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. Secs. 1001-1461 (1982 & Supp. V 1987), section 8315 of the California Commercial Code, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1961-1968 (1982 & Supp. V 1987), when it failed to distribute to the plan participants a surplus dividend received from BEHR's disability insurance carrier. BEHR appeals the district court's grant of partial summary judgment to Ruocco on the non-RICO causes of action awarding to Ruocco $629,423.31 minus administrative costs, and attorney's fees. We affirm the district court's decision with respect to defendant BEHR but reverse the decision holding defendants Bolin and Prush personally liable.
 
 I.
 
 6
 BEHR is a stock brokerage and financial consulting firm with its principal place of business in Los Angeles, California. At all relevant times, John R. Bolin was BEHR's president, chief executive officer and chairman of the board of directors. Theodore W. Prush was BEHR's executive vice president, chief financial officer and a member of the board of directors.
 
 
 7
 From 1968 to 1986, BEHR offered its employees group long term disability insurance through Union Mutual Insurance Company ("Union Mutual"). The Union Mutual policy was paid for by the employees participating in the plan. BEHR deducted premiums from the pay of participating employees and transmitted these premiums to Union Mutual. While BEHR paid premiums itself from time to time in order to prevent a lapse in coverage, the amount of premiums paid by BEHR was minimal. BEHR paid all administrative costs for the plan. Ruocco, an employee of BEHR until August 1986, elected the long term disability coverage provided by Union Mutual.
 
 The Union Mutual policy provided:
 
 8
 When proof is received that an insured employee is totally disabled as a result of sickness or injury and requires the regular attendance of a legally qualified physician, the Insurance Company will pay a monthly benefit to the insured employee after completion of the elimination period.
 
 
 9
 The policy defined "employee" as "a full-time employee, individual, proprietor, or partner who is regularly working at least 30 hours per week during the regular work week of the employer." The policy also provided that
 
 
 10
 [a]ll insurance provided under this Policy for an insured employee will cease at 12:00 midnight on the earliest of the following occurrences: ... (2) On the date that the insured employee ceases to be in a class of employees eligible for insurance.
 
 
 11
 On September 24, 1986, Union Mutual notified BEHR that it intended to convert from a mutual insurance company to a wholly-owned subsidiary of a publicly-owned stock corporation called UNUM. Under Maine law, where Union Mutual was incorporated, such conversion could take place only upon distribution to each policyholder of a pro rata share of the retained surplus which the converting company had acquired while it was operating as a mutual company. Union Mutual determined the BEHR surplus by considering the premiums paid between January 1, 1982 and December 31, 1984. Union Mutual notified BEHR that the returned surplus would take the form of shares of UNUM stock and warrants to purchase additional shares of UNUM stock. The warrants had to be exercised between September 26 and October 28, 1986.
 
 
 12
 In October 1986, the Executive Committee of BEHR decided to exercise the warrants and paid $609,336 to buy 25,755 shares of UNUM stock. These shares were sold by BEHR in November 1986 for $712,249.30 thereby generating a profit of $104,913.30. In November 1986, BEHR also received the straight distribution of UNUM shares which BEHR sold on November 6, 1988 for $524,510.01. In total, BEHR received $629,423.31 from the profit on the sale of shares purchased on the warrants and the sale of the distributed shares.
 
 
 13
 On June 29, 1987, Ruocco filed this action, claiming that BEHR's decision to retain the UNUM distribution violated ERISA, California Commercial Code section 8315, and various provisions of RICO. The district court dismissed the RICO claims, but granted summary judgment to Ruocco on both the ERISA and California Commercial Code section 8315 claims. The court found that the BEHR long term disability plan was an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. Sec. 1002(1), that defendants were "fiduciaries" of the Plan, that Ruocco was a "participant" in the plan, and that the surplus dividend constituted an "asset of the plan" pursuant to 29 U.S.C. section 1101. While the court found that defendants did not breach their fiduciary duty to the plaintiff class, the court held that defendants' decision to keep the UNUM distribution was "arbitrary and capricious." The court found that the balance of equities weighed in favor of the plan participants because "the premiums for the plan were paid for by the participants" and because "the funds would not inure to the benefit of the participants of the plan" if distributed to the defendants. The district court also found that the sale of the UNUM stock constituted a wrongful transfer of securities, in violation of California Commercial Code section 8315. Finally, the court ruled that plaintiffs were entitled to attorney's fees under ERISA pursuant to 29 U.S.C. section 1132(g)(1).
 
 
 14
 On September 6, 1988, BEHR petitioned this court for permission to pursue an immediate interlocutory appeal. The court granted this petition on December 2, 1988.
 
 II.
 
 15
 A grant of summary judgement is reviewed de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989); State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir.1989). The appellate court's review is governed by the same standard used by the trial court under Fed.R.Civ.P. 56(c). Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material facts and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989); Judie v. Hamilton, 872 F.2d 919, 920 (9th Cir.1989).
 
 
 16
 Issues dealing with the interpretation and application of ERISA provisions as well as preemption under ERISA are also subject to de novo review. Admiral Packing Co. v. Robert F. Kennedy Farm Workers Medical Plan, 874 F.2d 683, 684 (9th Cir.1989); Chase v. Trustees of W. Conf. of Teamsters Pension Trust Fund, 753 F.2d 744, 746 (9th Cir.1985); Trustees of Amalg. Ins. Fund v. Geltman Indus., Inc., 784 F.2d 926, 929 (9th Cir.), cert. denied, 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986).
 
 III.
 
 17
 BEHR asserts error on nine grounds.
 
 1. Lack of Jurisdiction
 
 18
 BEHR argues that the district court erred because it lacked jurisdiction over plaintiff's ERISA claim. BEHR argues that Ruocco was not a "participant" of a welfare benefit plan as defined by ERISA because Ruocco received all the benefits he was entitled to under the disability benefit plan and was no longer employed by BEHR at the time the Union Mutual surplus was distributed.
 
 
 19
 ERISA defines participant as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. Sec. 1002(7). The Supreme Court has interpreted ERISA's definition of participant as including both "employees in or reasonably expected to be in, currently covered employment," Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 957-58, 103 L.Ed.2d 80 (1989) (quoting Saladino v. ILGWU Nat'l Retirement Fund, 754 F.2d 473, 476 (2d Cir.1985)), or "former employees who 'have a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." Firestone, 109 S.Ct. at 957-58 (quoting Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir.), cert. denied, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986)).
 
 
 20
 Applying the Firestone test to this case, we find that Ruocco presents "a colorable claim" of entitlement to the Union Mutual surplus based on his status as a former plan participant who contributed financially to the plan. This claim to entitlement is not altered by Ruocco's termination of employment with BEHR.
 
 
 21
 2. California Insurance Code Section 10270.65
 
 
 22
 BEHR argues that the district court erred because under California Insurance Code section 10270.65, BEHR was entitled to retain the Union Mutual surplus.
 
 Section 10270.65 provides:
 
 23
 If hereafter any dividend is paid or any premium refunded under any policy of group disability insurance heretofore or hereafter issued, the excess, if any, of the aggregate dividends or premium refunds under such policy over the aggregate expenditures for insurance under such policy made from funds contributed by the policyholder, or by an employer of such insured persons or by union or association to which insured persons belong, including expenditures made in connection with the administration of such policy, shall be applied by the policyholder for the benefit of such insured employees generally or their dependents or insured members generally or their dependents. For the purpose of this section and at the option of the policyholder, "policy" may include all group life and disability insurance policies of the policy holder.
 
 
 24
 Cal.Ins.Code Sec. 10270.65 (West 1972).
 
 
 25
 The district court made three findings on this issue: first, that the code is not applicable to the facts of this case "since the UNUM distribution was neither a 'premium refund' nor 'dividend' as contemplated by the statute;" second, that because section 10270.65 "does not contemplate the offsetting of employer costs from all benefit plans before providing the surplus to the participants of the plan," BEHR could only recoup administrative costs incurred in connection with the BEHR long term disability plan; and third, that section 10270.65 is "preempted by ERISA, as it clearly 'relates to' an employee welfare benefit plan, as codified in 29 U.S.C. Sec. 1144(a)[1]."BEHR argues that the district court erred in its first holding because the Union Mutual distribution does constitute a "dividend" within the meaning of section 10270.65. BEHR argues that the court erred in its second holding because section 10270.65 allows a policyholder to aggregate the costs incurred in connection with its group life policy. With respect to the third holding, BEHR argues that there is no ERISA preemption because section 10270.65 deals with the regulation of insurance and therefore is covered by the insurance "saving clause" contained in section 1144(b)(2)(A).
 
 
 26
 While defendants are correct that the distribution of the surplus constitutes a dividend under section 10270.65 on which costs can be aggregated, see Luksich v. Kaser Steel Corp., 245 Cal.App.2d 373, 374-75, 53 Cal.Rptr. 875 (1966), we find that section 10270.65 is preempted under ERISA because it relates to an employee benefit plan within the meaning of 29 U.S.C. section 1144(a).
 
 
 27
 The "saving clause" of Sec. 1144(b)(2)(A) provides that "nothing in this title shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities." In determining whether a state's law regulates insurance and therefore is not preempted under section 1144(a), the Supreme Court set forth the following two-part test in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987):
 
 
 28
 In Metropolitan Life, we were guided by several considerations in determining whether a state law falls under the saving clause. First, we took what guidance was available from a 'common-sense view' of the language of the saving clause itself. 471 U.S., at 740 [105 S.Ct. 2380, 2389, 85 L.Ed.2d 728]. Second, we made use of the case law interpreting the phrase 'business of insurance' under the McCarran-Ferguson Act, 15 U.S.C. Sec. 1011 et seq., in interpreting the saving clause.
 
 
 29
 481 U.S. at 48, 107 S.Ct. at 1553. See also Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). With respect to the second-part of this test, the Court set forth the following three criteria for determining whether a practice falls under the 'business of insurance' for purposes of the McCarran-Ferguson Act[2]:
 
 
 30
 '[F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.'
 
 
 31
 Pilot Life, 481 U.S. at 48-49, 107 S.Ct. at 1553-54 (quoting Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982)) (emphasis in original).
 
 
 32
 California Insurance Code section 10270.65 does not regulate insurance within the meaning of either the McCarran-Ferguson Act or ERISA, 29 U.S.C. Sec. 1144(b)(2)(A). This statute fails the first part of the Metropolitan test because it does not transfer or spread the policyholder's risk but rather deals merely with the administration of certain policy surplus. The statute fails the second part of the test because it is not an "integral part of the policy relationship" between the insurer and the insured but rather deals with the relationship between the policyholder and the insured. While section 10270.65 is limited to entities within the insurance industry, this alone does not support a finding of insurance regulation within the meaning of section 1144(b)(2)(A). The "saving clause" to ERISA exempts from preemption state regulation of insurance companies and terms of insurance contracts not state regulation of employee benefit plans funded by the insurance industry.[3] The same conclusion is reached under a "common sense view" of section 10270.65.
 
 3. Asset of the Insurer
 
 33
 BEHR claims the retained surplus of a group disability carrier is not an asset of a covered plan pursuant to 29 U.S.C. section 1101 and therefore ERISA does not require BEHR to distribute the Union Mutual surplus to participating employees. Section 1101(b)(2) provides that "[i]n the case of a plan to which a guaranteed benefit policy is issued by an insurer, the assets of such plan shall be deemed to include such policy, but shall not, solely by issuance of such policy, be deemed to include any assets of the insurer."
 
 
 34
 While the premium surplus may have been held as an asset by Union Mutual, this asset was not owned by the insurance company but was part of the interest of the mutually insured in the company. See 18 J. Appleman, Insurance Law and Practice Sec. 10059 (1945). As stated, Union Mutual was required to distribute this retained surplus to policyholders prior to its conversion from a mutual insurance company to a wholly-owned subsidiary of a publicly-owned stock corporation. The surplus, therefore, did not constitute an asset of the insurer within the meaning of 29 U.S.C. section 1101(b)(2).
 
 4. Unexpected and Undeserved Windfall
 
 35
 BEHR contends that the district court erred in awarding the Union Mutual surplus to former employees because the award constitutes an unexpected and undeserved windfall for the employees. In determining who was entitled to the surplus, the district court relied heavily on the Third Circuit's decision in Chait v. Bernstein, 835 F.2d 1017 (3d Cir.1987). In Chait, the court held that an employer could amend an ERISA plan to allow surplus assets to revert to the employer despite the plan's prohibition on amendments to the plan to allow the funds to be used for purposes other than for the exclusive benefit of the employees. The court held that the plan could be so amended because the plan contained no additional language limiting the reversion beyond the "exclusive benefit" provision and because the equities of the case favored the employer's creditors rather than the vested employees. Id. at 1027. In reaching this conclusion, the court emphasized the fact that the plan was a "defined benefit plan to which the employees never contributed." On this matter, the court held:
 
 
 36
 In the context of a defined-benefit plan to which the employer was the sole contributor that does not contain explicit prohibitory language, we see no congressional policy that would prevent allowing the employer to amend the plan to receive excess assets after paying out all the benefits.
 
 
 37
 Id. See also Wright v. Nimmons, 641 F.Supp. 1391, 1406-07 (S.D.Tex.1986) (noting that where a trust plan is silent as to the distribution of assets, if the employer has "exclusively funded a plan," the "unbargained for distribution of excess assets to participants represents an unintended windfall for employees").
 
 
 38
 In this case, the district court found that the balancing of equities weighed in favor of the plan participants because the premiums for the plan were paid for by the participants and because "[o]utside of minor administrative costs, BEHR paid nothing." The court also found that if the surplus were distributed to the defendants, the fund would not inure to the benefit of the plan participants, but rather "as a result of BEHR's incentive bonus plan, would fall in large part into the hands of BEHR's Executive Committee which had voted to keep the distribution." We agree with the district court that the balance of equities weighs in favor of the plaintiff class.5. Resulting Trust
 
 
 39
 Next BEHR argues that it is entitled to retain the Union Mutual surplus under the law of trust because BEHR was the creator or settlor of the plan trust. BEHR argues that, as a result of its status as settlor of the trust, when surplus assets remained in the long term disability fund after the trust's purpose had been fulfilled, a resulting trust arose for its benefit. We reject BEHR's argument. BEHR did not pay the premium costs to fund the plan and therefore was neither a 'creator' nor 'settlor' of the trust. See, e.g., Lehman v. Commissioner of Internal Revenue, 109 F.2d 99, 100 (2d Cir.), cert. denied, 310 U.S. 637, 60 S.Ct. 1080, 84 L.Ed. 1406 (1940) (defining settlor as one who furnishes the consideration for a trust).
 
 6. Financial Risk
 
 40
 BEHR argues that the district court erred in ordering BEHR to pay its former employees the profits which it earned by exercising the UNUM warrants because BEHR risked its own money in exercising the warrants and could not have provided its former employees with sufficient notice to exercise these warrants given the large number of employees involved. BEHR's argument as to what would have happened had it given the plan participants notice is speculative and does not support a finding that BEHR is entitled to retain the surplus. Nor does the fact that BEHR used its own money to exercise the warrants justify BEHR's retention of the acquired profit.
 
 7. California Commercial Code Section 8315
 
 41
 BEHR argues that the district court erred in finding that the sale of the UNUM stock by defendants constituted a wrongful transfer of securities in violation of California Commercial Code section 8315 which prohibits the wrongful transfer of securities.[4] We disagree. The district court correctly found that section 8315 is a state statute regulating securities and therefore is saved from ERISA preemption under 29 U.S.C. section 1144(b)(2)(A). Contrary to BEHR's contention, we find no inconsistency between the district court's finding that California Insurance Code section 10270.65 is preempted by ERISA because it does not regulate insurance and the court's finding that California Commercial Code section 8315 is not preempted because it does regulate securities.
 
 8. Attorney's Fees
 
 42
 BEHR argues that the district court erred in awarding attorney fees sua sponte because it did not discuss the factors set forth in Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 452 (9th Cir.1980) and did not give the parties an adequate opportunity to address this matter. We disagree. The district court provided BEHR with an opportunity to address the matter when it received BEHR's opposition to the proposed statement of undisputed facts. The district court also considered the Hummell factors in determining that an award of attorney's fees was reasonable and appropriate. In Hummell, the court held that the following five factors must be considered in determining whether to award attorney's fees under 29 U.S.C. section 1132(g):
 
 
 43
 (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and solve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.
 
 
 44
 Hummell, 634 F.2d at 453. The district court in this case applied the Hummell test and found that defendants had the ability to satisfy an award of attorney's fees, that the awarding of fees will deter others from acting in an arbitrary and capricious manner, that Ruocco was seeking to benefit all participants of the BEHR Plan and to resolve significant legal questions concerning ERISA, and that Ruocco's position in this litigation was substantiated on both legal and equitable grounds.
 
 9. Personal Liability of Bolin and Prush
 
 45
 While the district court did not err in awarding the Union Mutual surplus and attorney's fees to the plaintiff class, the district court did err in its finding that defendants Bolin and Prush were personally liable in light of its additional finding that neither defendant breached his fiduciary duty or otherwise acted in bad faith. While Bolin and Prush may have benefited by their decision to retain the UNUM surplus under BEHR's bonus incentive program for top executives, there is no evidence that Bolin or Prush did anything personally or that the decision to retain the UNUM surplus was not a corporate act. Likewise, while Bolin and Prush were members of the Executive Committee, the decisionmaking body of BEHR, there is no evidence that they controlled this Committee.
 
 CONCLUSION
 
 46
 We affirm the judgment of the district court awarding the plaintiff class $629,423.31 minus administrative costs, and attorney's fees against defendant BEHR. We reverse the court's decision holding defendants Bolin and Prush personally liable. Plaintiff shall recover from defendant BEHR 80 percent of his costs on appeal.
 
 
 47
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 *
 Honorable Malcolm F. Marsh, United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 29 U.S.C. Sec. 1144(a) provides:
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
 
 
 [2]
 The McCarran-Ferguson Act of 1945 provides that "[n]o act of Congress shall be construed to invalidate, impart, or supersede any law enacted by any State for the purpose of regulating the business of insurance ..." 15 U.S.C. Sec. 1012(b) (1982)
 
 
 [3]
 In reaching this conclusion, we also draw support from the fact that "the express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.' " Pilot Life, 481 U.S. at 45-46, 107 S.Ct. at 1551-52 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)); see also Board of Trustees v. H.F. Johnson, Inc., 830 F.2d 1009, 1016 (9th Cir.1987) ("ERISA preemption is to be construed broadly")
 
 
 [4]
 Section 8315(1) of the California Commercial Code states in pertinent part:
 Any person against whom the transfer of a security is wrongful for any reason, ... as against any purchaser except a bona fide purchaser, may do any of the following:
 (a) Reclaim possession of any new certificated security wrongfully transferred.
 (b) Obtain possession of any new certificated security representing all or part of the same rights ...
 (d) Have damages.