**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MORGAN MILLER; KYLEE MILLER;
WAYNE HOOVER, and MORGAN
MILLER, as personal representative
of the Estate of Connie Miller,
          *Plaintiffs-Appellants,*

        v.

RITE AID CORPORATION, a Delaware
corporation; THRIFTY PAYLESS INC;
STANDARD INSURANCE COMPANY, an
Oregon Corporation,
          *Defendants-Appellees.*

No. 05-35505

D.C. No.
CV-04-00601-AJB

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued & Submission Deferred July 11, 2007
Submitted July 19, 2007
Portland, Oregon

Filed October 11, 2007

Before: Stephen Reinhardt, Cynthia Holcomb Hall, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Reinhardt

13795

## COUNSEL

J. Michael Alexander, Swanson, Lathen, Alexander & McCann, PC, Salem, Oregon, for the appellants.

Bruce A. Rubin and Jennifer J. Roof, Miller Nash LLP, Portland, Oregon, for the appellees.

**OPINION**

REINHARDT, Circuit Judge:

This case presents the question whether the estate and alleged beneficiaries of an employee who was neither enrolled in, nor eligible for, a life insurance plan regulated by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, at the time of her death (which preceded the time this action was filed) may bring an ERISA claim. We hold that these parties may not bring such a claim, and therefore ERISA does not preempt Appellants' state law claims.

## I. Factual and Procedural Background

Connie Miller ("Miller") was employed by Rite Aid from approximately 1981 until her death on February 13, 2002. For some unknown period of time, Rite Aid made deductions from Miller's paycheck to pay for life insurance through a group plan provided by ReliaStar Life Insurance Company ("ReliaStar"). Appellants claim that the ReliaStar policy provided for a benefit of approximately $150,000 and that Miller's children were the beneficiaries of the policy.

In February 2001, Miller was diagnosed with terminal cancer and was placed on disability until her death one year later. On July 1, 2001, before Miller's death, Rite Aid terminated its ReliaStar plan and replaced it with a group plan provided by Standard Insurance Company ("Standard"). Miller was not enrolled in the Standard life insurance plan because she was not included in the list of employees exempt from the plan's "active at work" requirement, which provided that

> If you are incapable of Active Work because of Sickness, Injury or Pregnancy on the day before the scheduled effective date of your insurance . . . your insurance will not become effective until the day

after you complete one full day of Active Work as an eligible member. [ ] Active Work . . . mean[s] performing the material duties of your occupation at your Employer's usual place of business.

Therefore, Miller was not enrolled in a group life insurance plan after Rite Aid terminated the ReliaStar plan. Miller also did not convert the ReliaStar group plan into an individual plan.[1]

Appellants allege, without any details, that Rite Aid "offered, as part of the employment agreement [with Miller], that [Miller] would be provided with life insurance." Appellants also allege that after Miller became terminally ill Rite Aid representatives assured her that she would continue to have life insurance through the time of her death. Miller allegedly repeated these assurances to her daughter. Appellants also allege that after Miller's death Rite Aid representatives told her daughter that Miller had life insurance at the time of her death.[2] Appellants later discovered that they were not eligible for any benefits because Miller was not enrolled in any life insurance plan.

After Miller died, her children and alleged beneficiaries, Morgan Miller, Kylee Miller, Wayne Hoover, individually, and Morgan Miller as personal representative of Miller's Estate, filed suit in the Circuit Court of the State of Oregon against Rite Aid Corporation, Thrifty Payless, Inc.,[3] ReliaStar

---

[1]The ReliaStar policy stated, "You or your insured dependent may convert this insurance by applying for the individual policy within 31 days after any part of your Life Insurance . . . stops." However, under the conversion provision, Miller would have been eligible to purchase only $5,000 in life insurance.

[2]The parties disagree as to whether these statements are hearsay, but the statements are in any event irrelevant to the preemption question, the only issue before us on appeal.

[3]Thrifty Payless, Inc. is the predecessor company of Rite Aid Corporation. The companies are represented jointly in this appeal, and we refer to both as "Rite Aid." We sometimes refer to Appellants as "the Millers."

Insurance Company, and Standard Insurance Company. In their Amended Action, they alleged breach of insurance contract against ReliaStar and, in the alternative, against Standard, for failure to pay death benefits worth approximately $150,000. Alternatively, Appellants alleged breach of employment contract against Rite Aid for failing to provide Miller with life insurance. The Millers also alleged that Rite Aid negligently failed to "ensure that [Miller's] fringe benefits would be preserved."

The defendants removed the action to the United States District Court for the District of Oregon, on the ground that the District Court had federal question jurisdiction because ERISA preempted the Appellants' state law claims. In the alternative, the defendants claimed that the District Court had diversity jurisdiction with respect to Rite Aid.

Appellants voluntarily dismissed their claim against ReliaStar, and Standard and Rite Aid filed motions for summary judgment. The district judge granted summary judgment in favor of Standard, and Appellants did not appeal that decision. In the district court, Rite Aid contended that Appellants' state common law claims were preempted by ERISA. Rite Aid further argued that the Millers did not have valid common law or ERISA claims against it because ReliaStar provided instructions for converting the group policy to an individual policy, and because "Miller was not even eligible to receive life insurance through Rite Aid" due to the Standard policy's "active at work" requirement. The district judge granted summary judgment on the preemption ground and dismissed the action.

The Millers appealed. Rite Aid is the only appellee.

## II. Discussion

State common law claims are preempted by ERISA "insofar as they may now or hereafter relate to any employee bene-

fit plan" regulated by ERISA. 29 U.S.C. § 1144(a). But before a court wades into this provision's "veritable Sargasso Sea of obfuscation," it must first resolve the simpler question of whether a party may assert a claim under ERISA. *Toumajian v. Frailey*, 135 F.3d 648, 653 n.3 (9th Cir. 1998) (citation and internal quotation marks omitted). *See also Burrey v. Pac. Gas & Elec. Co.*, 159 F.3d 388, 392 (9th Cir. 1998); *Curtis v. Nev. Bonding Corp.*, 53 F.3d 1023, 1026-27 (9th Cir. 1995).

**[1]** A civil action under ERISA may be brought by a "participant" in or "beneficiary" of an ERISA plan. 29 U.S.C. § 1132(a)(1). ERISA does not preempt the claims of parties who do not have the right to sue under ERISA because they are neither participants in nor beneficiaries of an ERISA plan. *Curtis*, 53 F.3d at 1027. As we stated in *Harris v. Provident Life & Accident Insurance Co.*, 26 F.3d 930, 934 (9th Cir. 1994), "it would be contradictory to rule that state law claims are preempted where the court has already held that the same plaintiffs may not assert a claim under ERISA because they are not 'participants' in the ERISA plan. . . . Unlike the Chesire [sic] Cat, one cannot have the smile of preemption without the stripes of participation." (citations and internal quotation marks omitted).

Appellants, the Miller's estate and her beneficiaries, may bring a civil suit under ERISA only if Miller was a "participant" in an ERISA plan at the relevant time. ERISA defines a "participant" as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). The Supreme Court has interpreted this provision to mean that a party is a "participant" if he is an employee in, or reasonably expected to be in, currently covered employment, or if he is a former employee who has a reasonable expectation of returning to covered employment, or a "colorable claim" to

vested benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989).

Miller was employed by Rite Aid until the time of her death, so to decide whether Miller was a "participant," we must ask whether Miller was either covered by an ERISA life insurance plan at the relevant time, or whether she may have become eligible for benefits from such a plan at such time. In order to establish that Miller "may become eligible," she "must have a colorable claim that (1) [she] will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Id.* at 117-18.

**[2]** In order to answer the questions before us we must first identify the relevant time for determining whether Miller was a "participant." We have repeatedly held that whether a living party is a "participant" or "beneficiary" is determined as of the time the lawsuit is filed. *See, e.g., Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1039 (9th Cir. 2006); *Schultz v. PLM Int'l, Inc.*, 127 F.3d 1139, 1141-42 (9th Cir. 1997); *Crotty v. Cook*, 121 F.3d 541, 544-47 (9th Cir. 1997); *Curtis*, 53 F.3d at 1027 (9th Cir. 1995); *Parker v. Bain*, 68 F.3d 1131, 1138-39 (9th Cir. 1995); *Harris*, 26 F.3d at 933; *Olson v. Gen. Dynamics Corp.*, 960 F.2d 1418, 1422 (9th Cir. 1991), *cert. denied*, 504 U.S. 986 (1992); *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 714-15 (9th Cir. 1990); *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir. 1986), *cert. denied*, 479 U.S. 916 (1986), *abrogated on other grounds by Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995). However, we have never identified the applicable time for evaluating the claims of a decedent's estate and beneficiaries.[4]

---

[4]ERISA does not specify the relevant time, but we have deviated from our time-of-suit rule only once, when the employer's termination of the employee threatened to undermine the enforcement of ERISA's whistle-blower provision, 29 U.S.C. § 1140, by an employee who was allegedly fired for challenging the decision to terminate the plan. *McBride v. PLM Int'l, Inc.*, 179 F.3d 737, 742-43 (9th Cir. 1999). In this case we do not need to create an exception to the standard rule because Rite Aid did not unlawfully single Miller out in a way that undermined her ability to bring an ERISA claim, or take any other action designed to undermine the enforcement of ERISA.

**[3]** In the case of a deceased employee, it would seem to make more sense to look to the time of the employee's death to determine whether he is covered by an insurance plan, although it is inconceivable that there could be any change in eligibility between the time of death and the time the suit is filed. This will also be the applicable time for determining whether the decedent had a colorable claim to benefits.[5]

At the time of Miller's death she did not qualify as a "participant" in any ERISA life insurance plan because at that time she was not covered by any life insurance policy and she did not have a colorable claim to benefits under any plan.[6]

**[4]** Miller was not covered by the ReliaStar life insurance plan because Rite Aid terminated the plan before she died.[7]

---

[5]Of course, in the case of someone who dies after filing suit, the relevant time would be the time of the filing of the suit. The Third Circuit has held that to determine whether someone is a "beneficiary" for the purposes of adjudicating a claim that the employer did not provide life insurance plan documents, the party's status should be evaluated at the time he requests such documents. *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 78 (3d Cir. 2001). *Daniels* gave no reason for this rule, but adopting the analogous rule in this case — looking to the time the parties sought benefits — would not affect our holding. The Sixth and Seventh Circuits look to the time of filing of the suit, which is, as we have noted, for practical purposes the same as the time of death. *See Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 303-04 (6th Cir. 2006); *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 878 (7th Cir. 2001).

[6]It is worth noting that determining what constitutes a colorable claim to benefits is not the same as determining whether a plaintiff might recover under *any* cause of action. The relevant issue is whether a plaintiff might recover under an ERISA claim. If the only colorable claims available to a plaintiff were non-ERISA claims, there would be no basis for stating that such a party could sue under ERISA. *See Curtis*, 53 F.3d at 1028; *Freeman v. Jacques Orthopaedic & Joint Impact Surgery Med. Group*, 721 F.2d 653, 656 (9th Cir. 1983).

[7]Rite Aid implicitly conceded below that the relevant time for evaluating Appellants' ability to bring an ERISA claim against Rite Aid was some time after Rite Aid terminated the ReliaStar policy. Rite Aid wrote

Miller did not have a colorable claim to benefits under the ReliaStar plan because life insurance plans have no obligation to pay benefits to any person who is still alive at the time of termination. Thus, none of the former members of the Relia-Star plan had any colorable claim to benefits after the plan was terminated, including Miller. *Cf. Ruocco v. Bateman, Eichler, Hill, Richards, Inc.*, 903 F.2d 1232, 1236 (9th Cir. 1990) (employee has colorable claim under Maine law requiring distribution of surplus from terminated plan); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir. 1985) (employees have claim to benefits from severance plan of company that laid them off).[8]

[5] Miller was not covered by the Standard life insurance plan that Rite Aid provided to replace the ReliaStar plan, because the Standard plan's active-at-work requirement made her ineligible for enrollment. If Miller was never eligible for coverage under the Standard plan she could not have a colorable claim to benefits under that plan. *See Burrey v. Pacific*

in its Memorandum in Support of Summary Judgment that "Miller was not even eligible to receive life insurance through Rite Aid. . . . Because it was not possible for Rite Aid to enroll Miller in its new group policy with Standard, Rite Aid could not have wrongly applied group life insurance plan rules in Miller's case. Because Rite Aid could not have misapplied plan rules in Miller's case, Miller cannot have an ERISA claim against Rite Aid." We agree with Rite Aid that the proper time to determine whether Miller was "eligible to receive life insurance through Rite Aid" was some time after the termination of the ReliaStar plan. We disagree with Rite Aid's contention that Appellants have a claim against ReliaStar because she was at one time enrolled in a ReliaStar group plan.

[8]Rite Aid incorrectly asserts that in *Scott* we based our holding that the prospective benefits claims were not preempted "on the fact that preemption would leave the plaintiffs without a remedy under ERISA." This was not the basis for *Scott's* holding. Although we did mention this fact in passing, it was only after concluding that "*Freeman* controls plaintiffs' claims for prospective severance benefits." *Scott*, 754 F.2d at 1505. *Freeman*, 721 F.2d at 656-57, makes no mention of the effect of preemption on available remedies.

*Gas & Elec. Co.*, 159 F.3d 388, 396 (9th Cir. 1998); *Curtis*, 53 F.3d at 1028; *Harris*, 26 F.3d at 933-34.

**[6]** Finally, the alleged fact that Rite Aid promised life insurance coverage to Miller or her daughter does not make Miller a "participant," because mere promises do not create ERISA plans "unless . . . the benefits [are] offered pursuant to an organized scheme," and "the terms of the offer, in the context . . . enable a reasonable person to discern the elements of the benefits scheme." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 939 (9th Cir. 2003). *See also Curtis*, 53 F.3d at 1028; *Scott*, 754 F.2d at 1504. The alleged fact that Rite Aid agreed to provide Miller life insurance benefits worth $150,000 does not by itself meet this threshold.

**[7]** Because Miller herself was thus not a participant in any ERISA plan, Miller's estate cannot bring a suit under ERISA. Similarly, Miller's children cannot bring a suit as "beneficiaries" of an ERISA plan, because Miller was not a participant in any plan. ERISA defines a beneficiary as someone designated by a participant, or "by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Just as we look to the time of the employee's death to determine whether he is a "participant," we look to the time of death to determine whether the employee's children are "beneficiaries." The claim of Miller's children to benefits under ERISA can be no greater than Miller's claim.

Most of Rite Aid's arguments for why the Millers' claims should be preempted assume that Miller was a "participant" in an ERISA plan. We need not address those arguments in light of our conclusion that she was not. We will address, however, Rite Aid's two arguments that Miller *was* a participant.

**[8]** Rite Aid's first argument is that the extent to which it failed to provide life insurance depends on the terms of the

ReliaStar policy in which Miller was once enrolled. But a party does not become a "participant" in a plan merely because the court will have to look to the terms of a terminated plan to determine the employer's liability for failure to create a new plan. *See Freeman v. Jacques Orthopaedic & Joint Implant Surgery Med. Group*, 721 F.2d 653, 655-56 (9th Cir. 1983) ("Even if [the employee] were to win his [state law] claim . . . . [the employee] would receive as damages what a participant would receive as a benefit under the plan. . . . He would not, however, become enrolled in the plan and become a participant."). *See also Curtis*, 53 F.3d 1023; *Harris*, 26 F.3d 930; *Scott*, 754 F.2d at 1501, 1505.

Rite Aid's second argument is that we should consider Miller a "participant" in the ReliaStar ERISA plan because Miller was eligible to convert that plan to an individual policy within thirty-one days of the plan's termination. Rite Aid cites *McLeod v. Oregon Lithoprint, Inc*., 46 F.3d 956, 957-59 (9th Cir. 1995), *vacated on other grounds*, 517 U.S. 1116 (1996), a case in which we held that the plaintiff was a "participant," even though she was never enrolled in an ERISA plan, because she was at one point eligible to apply for and receive benefits from an ERISA plan. Therefore, we held, she had a "colorable claim" that she would prevail in a suit for benefits. Rite Aid argues that Miller is in a similar position because she was eligible to convert the terminated ReliaStar plan to an individual policy.

**[9]** But unlike the plaintiff in *McLeod*, Miller was not eligible to receive benefits from an ERISA plan, because converted plans are not ERISA plans. Such plans cover members as individuals, not as employees, and an employee benefit plan must cover at least one employee to constitute an ERISA benefit plan. *Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 875-76 (9th Cir. 2001). Even if Miller had converted the ReliaStar plan, that would not make her a "participant" in any ERISA plan. Thus, that Miller had an opportunity to convert does not make her a participant. All

this is wholly aside from the fact that Miller was offered only an opportunity to convert a $150,000 policy to a $5,000 benefit.

## III. Conclusion

**[10]** We hold that the state law claims brought by Appellants are not preempted because Appellants are not participants in or beneficiaries of an ERISA plan. We therefore VACATE the District Court's grant of summary judgment, and REMAND for further proceedings consistent with this opinion.