989 So.2d 670 (2008)
Barbara BERTONI, Appellant,
v.
STOCK BUILDING SUPPLY, f/k/a Carolina Holdings, Inc., f/k/a Stuart Lumber Company of Pompano Beach, Florida and Stuart Lumber Company of Fort Myers, Florida, and Stock Building Supply of Florida, Inc., Appellees.
No. 4D07-4241.
District Court of Appeal of Florida, Fourth District.
July 30, 2008.
Rehearing Denied October 2, 2008.
*672 Paul M. Sullivan, Jr., West Palm Beach, for appellant.
Juan C. Enjamio of Hunton & Williams LLP, Miami and A. Todd Brown of Hunton & Williams LLP, Charlotte, for appellees.
TAYLOR, J.
Plaintiff Barbara Bertoni sued her deceased husband's former employer, asserting that the employer negligently failed to procure supplemental life insurance for her husband after he submitted an enrollment application for supplemental life insurance. The trial court entered summary judgment in favor of the employer, finding that plaintiff's negligence claim is preempted by the Employment Retirement Income Security Act of 1974, as amended ("ERISA"). Because we conclude that plaintiff's claim is not related to an ERISA plan and, thus, is not preempted, we reverse the final summary judgment and the order which struck plaintiff's demand for jury trial. We affirm, however, the order which denied plaintiff's request for leave to amend her complaint to add a claim for punitive damages, because the plaintiff failed to make a reasonable showing under section 768.72, Florida Statutes, for a recovery of punitive damages. See Holmes v. Bridgestone/Firestone, Inc., 891 So.2d 1188, 1191 (Fla. 4th DCA 2005).
In January 2000, Stock Building Supply, Inc. ("Stock") acquired certain assets of Stuart Lumber Co. of Ft. Myers. At that time, Stock hired the acquired company's employees, including John Patrick Bertoni. In February 2000, Tricia Helfrich, Stock's Human Resources Director, held three benefits enrollment meetings at the Ft. Myers location for the new associates. Mr. Bertoni was present for all three meetings. During the enrollment meetings, each associate was given a packet of benefits enrollment forms and information. One of the benefits offered by Stock was supplemental life insurance. This was provided through Sun Life Assurance Co. of Canada (Sun Life). Supplemental life insurance benefits were optional. To obtain such benefits during the February 2000 enrollment period, the associates at the Ft. Myers location were required to complete a Supplemental Life Insurance Enrollment Form which was included in each enrollment packet. If an associate indicated that he or she wanted supplemental life insurance coverage, Stock deducted the premium from the associate's paycheck and submitted those premiums to Sun Life. Stock showed the supplemental life insurance deduction as a separate line item deduction on associates' paychecks.
Also included in the packet given to associates was a General American Enrollment Form. The General American form was used to obtain health insurance coverage and to designate beneficiaries for basic life insurance coverage. Basic life coverage was provided to associates at no extra cost. Obtaining this basic coverage required only the designation of a beneficiary on the General American form. The Great American form contains a box entitled "Coverage Election." Within that box are eleven small boxes, one of which is entitled "*Supplemental Life." At the bottom of the larger box is the asterisk reference "*Supplemental Amount Applied For: $______." Helfrich's affidavit states that she expressly instructed associates *673 to disregard the "coverage election" box on the General American form, because "it did not pertain to the associates' benefits and filling out that box would have no effect." Nonetheless, Bertoni checked the Supplemental Life box (and six others) on this form and filled in the amount "$150,000" as the supplemental life insurance amount applied for.
The General American form was then processed by Stock's Benefit Manager, Jennifer Jackson. Jackson stated in her affidavit that she ignored attempts to elect supplemental insurance in this manner and did not follow up to inquire if the associate desired supplemental life insurance coverage.
On January 4, 2002, Mr. Bertoni was diagnosed with cancer. He subsequently died without the supplemental life insurance protection which he had apparently attempted to procure.
On March 1, 2004, Barbara Bertoni, the intended beneficiary of the supplemental life insurance benefits, sued Stock Building Supply, Inc., f/k/a Stuart Lumber Co. of Pompano Beach, Florida and Stuart Lumber Co. of Ft. Myers, Florida, Stock Building Supply of Florida, Inc., Sun Life Assurance Co. of Canada, and Sun Life Assurance Co. of Canada (U.S.), in a three-count complaint alleging breach of contract and negligence. On April 7, 2004, the Sun Life defendants removed the action to federal court. On June 8, 2004, while the matter was pending before the federal district court, Plaintiff amended her complaint, alleging only common law negligence and an ERISA breach of fiduciary duty claim against the employer defendants (the claims against the Sun Life defendants had by this point been dismissed). On August 13, 2004, the federal district court dismissed plaintiff's negligence action, concluding that it was preempted by ERISA's express preemption provision. On November 2, 2005, the federal court remanded the action, finding that Barbara Bertoni lacked standing to sue under ERISA (the sole remaining count of her complaint). The remand order provided:
ORDERED and ADJUDGED that Plaintiff's Motion for Judgment on the Pleadings and Remand to State Court for Lack of Subject Matter Jurisdiction [DE 45] is GRANTED. Accordingly, the above-styled matter is REMANDED to the Fifteenth Circuit Court in and for Palm Beach County, Florida, for consideration of any non-ERISA common law claims of Plaintiff.
After remand to the state court, Plaintiff moved for leave of court to amend her complaint to assert a claim for punitive damages. The trial court denied her motion to claim punitive damages and granted the defendants' motion to strike the plaintiff's demand for jury trial.
The defendant moved for summary judgment, contending: (a) that plaintiff could not re-assert the negligence action which had been dismissed by the federal district court; (b) that plaintiff's negligence claim was preempted by ERISA; and (c) that the facts of record could not support a negligence claim. The trial court granted the motion for summary judgment on ERISA preemption grounds.
A ruling on a motion for summary judgment is reviewed de novo. Florida Bar v. Greene, 926 So.2d 1195, 1200 (Fla.2006). Summary judgment is designed to test the sufficiency of the evidence. It is appropriate where it is apparent from the record that there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law. Id. This appeal primarily concerns an issue of law, namely, whether, as the trial court determined, ERISA preempts plaintiff's common law negligence action.
*674 ERISA was passed by Congress in 1974 to "safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." MEBA Med. & Benefits Plan v. Lago, 867 So.2d 1184, 1188 (Fla. 4th DCA 2004) (quoting Massachusetts v. Morash, 490 U.S. 107, 112-113, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989)). ERISA's civil enforcement mechanism has been described by the Supreme Court, as follows:
Under the civil enforcement provisions of § 502(a), a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits.
Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The participant or beneficiary may also sue for breach of fiduciary duty and seek removal of the fiduciary. Id. As the federal district court found, the plaintiff in this case lacks standing to utilize the ERISA civil enforcement mechanism because she does not fit the statutory definitions of a "participant" or a "beneficiary." See 29 U.S.C. 1002(7), (8) (2007).
At the outset, we distinguish between the concepts of "complete preemption" and "defensive preemption." "Complete preemption" exists where Congress has created a comprehensive remedial scheme. In such cases, federal jurisdiction exists even if the face of the complaint does not plead federal claims. Autonation, Inc. v. United Healthcare Ins. Co., 423 F.Supp.2d 1265, 1268 (S.D.Fla.2006). Thus, complete preemption is a jurisdictional doctrine which converts state law claims into federal claims for purposes of removal. Id. The elements of complete preemption are as follows:
First, there must be a relevant ERISA plan. Second, the plaintiff must have standing to sue under that plan. Third, the defendant must be an ERISA entity. Finally, the complaint must seek compensatory relief akin to that available under [§ 502(a)]; often this will be a claim for benefits due under a plan.
Cotton v. Mass. Mut. Life. Ins. Co., 402 F.3d 1267, 1281 (11th Cir.2005) (quoting Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir.1999)). Because the federal district court concluded that plaintiff had no standing, it followed that complete preemption did not exist. Thus, lacking removal jurisdiction over plaintiff's state law claims, the court properly entered its remand order, leaving it to the state court to resolve the remaining "defensive preemption" question.
"Defensive" (or "conflict") preemption does not furnish federal subject matter jurisdiction. Rather, defensive preemption provides an affirmative defense to certain state law claims and calls for their dismissal where the state claim "relates to" an ERISA plan. Autonation, 423 F.Supp.2d at 1269. This defensive preemption doctrine and its "relates to" standard originate from ERISA's express preemption provision, 29 U.S.C. § 1144(a). Id.
Initially, the Supreme Court gave the "relates to" preemption language its broadest possible "dictionary" meaning, stating that a law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); see also Hampers v. W.R. Grace & Co., 202 F.3d 44, 49 (1st Cir.2000). However, even under that broad view, the Supreme Court *675 recognized that some actions would be too peripherally or remotely related to the ERISA benefit plan to justify preemption. See Shaw, 463 U.S. at 97, 103 S.Ct. 2890.
Subsequently, in New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) ("Travelers"), the Court narrowed its broad dictionary definition. It stated that the "starting presumption" is that Congress does not intend to supplant state law. Id. at 654, 115 S.Ct. 1671. It went on to describe the "relates to" language of the preemption statute as "unhelpful," and instructed that one is instead to look "to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." Id. at 656, 115 S.Ct. 1671. Travelers noted that in light of the objectives of ERISA and its preemption clause, Congress intended to preempt "state laws providing alternative enforcement mechanisms" for employees to obtain ERISA plan benefits. Id. at 658, 115 S.Ct. 1671.
Even before Travelers, the Sixth Circuit had created a three-part test for determining whether a state law claim "relates to" an ERISA plan or is so remote and peripheral as not to be preempted. This test has continued viability after Travelers. See Flanagan Lieberman Hoffman & Swaim v. Transamerica Life & Annuity Co., 228 F.Supp.2d 830, 847 (S.D.Ohio 2002). This test is the best crystallization we have found of the concerns which have dominated the thinking of courts struggling to apply the ERISA preemption provision. Under this three-part test, first, the court must determine whether the state law represents a traditional exercise of state authority. Firestone Tire & Rubber Co. v. Neusser, 810 F.2d 550, 555-56 (6th Cir.1987). Second, the court must determine whether the law affects relations between principal ERISA entities. Id. at 556. Third, it must determine the effect that the law, if upheld and the claim thereunder found viable, will have on the plan. Id.
In this case, we first determine that the neutral application of Florida tort law is an exercise of traditional state authority. Second, because plaintiff herself is not a principal ERISA entity and her claim would simply result in a money judgment against her former husband's employer, we do not believe the law would affect relations between principal ERISA entities. Third, because plaintiff has dismissed the insurance company as a party and is seeking damages only from the employer, and not funds from the plan, this action will not affect the plan at all. Thus, under the Sixth Circuit's test, plaintiff's claim is not preempted.
It is well-established that state law actions alleging wrongdoing in the processing or denial of insurance claims are preempted. See, e.g., Pilot Life, 481 U.S. at 52, 107 S.Ct. 1549; Autonation, 423 F.Supp.2d at 1270; Andrews-Clarke v. Lucent Techs., Inc., 157 F.Supp.2d 93, 104 (D.Mass.2001). However, the plaintiff in this case does not allege the wrongful processing or denial of an insurance claim. Rather, she alleges negligence in the processing of an insurance application. This raises very different concerns.
In Coyne & Delany Co. v. Selman, 98 F.3d 1457 (4th Cir. 1996), an employer brought both ERISA claims and professional malpractice claims alleging that a company specializing in designing group health insurance plans had failed to obtain the proper replacement insurance for the employer. The Fourth Circuit began its analysis by emphasizing that allowing Delany [i.e., the employer] to pursue its malpractice claim "would not undermine the congressional policies that underlie *676 ERISA." Id. at 1470. It noted that the claim did not subject plan administrators and plan sponsors to conflicting directives by different states or the federal government. "Thus, a finding of preemption in this case is not necessary to protect the objectives of ERISA." Id. The court rejected the idea that the malpractice action was an "alternative enforcement mechanism" for employees to obtain plan benefits. It noted that the company is not a beneficiary and its employees were not participants, so that "it is necessarily the case that Delany's common law action cannot be considered an alternative enforcement mechanism for obtaining plan benefits." The court continued:
Moreover, the malpractice claim is not aimed at obtaining ERISA benefits. Rather, the claim seeks damages proximately caused by the insurance professional's negligent failure to procure the promised replacement plan. If Delany prevails on its claim, the defendants will be liable in their individual capacities for their negligence as insurance professionals.
We believe that Delany's malpractice claim against insurance professionals is a traditional state-based law of general applicability that does not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries and the beneficiaries. There is no question that Delany's malpractice claim is rooted in a field of traditional state regulation. Common law professional malpractice, along with other forms of tort liability, has historically been a state concern. Moreover, a common law professional malpractice claim is "a generally applicable [law] that makes no reference to, or functions irrespective of, the existence of an ERISA plan."
Coyne, 98 F.3d at 1471 (citations and quotation marks omitted).
The Fourth Circuit concluded, as follows:
The defendants' malpractice, if any, did not involve an existing ERISA plan. Instead, it involved the failure to procure the coverage and reinsurance protection Delany wanted. Quite simply, the existence of an ERISA plan cannot be critical to Delany's malpractice claim since a malpractice claim would still exist if the defendants had procured no plan at all. To be sure, resolution of Delany's malpractice claim will require an examination of certain provisions in the Delany Plan the defendants drafted and the Security policy the defendants procured. Thus, to some extent the court's inquiry will be directed to the plan. However, we do not believe this factor carries much weight in this context.
Coyne, 98 F.3d at 1472 (citations and quotation marks omitted). We find Coyne persuasive and factually analogous to this case. Along with the other cases cited above, it supports the conclusion that plaintiff's claim is not preempted.
Plaintiff complains that because she has no ERISA remedy, if ERISA is found to preempt her state law claim, then she will have no remedy at all. Heretofore, we have described the situation where ERISA preempts a claim but provides no remedy as a "catch-22" which "creates a legal conundrum." MEBA Med., 867 So.2d at 1189. Other courts have described this situation as a remedial "gap" in the law. See e.g. Phillips v. Amoco Oil Co., 799 F.2d 1464, 1469 (11th Cir.1986). In any event, the vast majority of courts hold, as a general matter, that the absence of an ERISA remedy is no excuse for declining to find plan-related state law claims to be preempted. See First Nat'l Life Ins. Co. v. Sunshine-Jr. Food Stores, Inc., 960 *677 F.2d 1546, 1550 (11th Cir.1992); Smith v. Dunham-Bush, Inc., 959 F.2d 6, 11 (2d Cir.1992); Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir. 1991); Lister v. Stark, 890 F.2d 941, 946 (7th Cir.1989); Steele v. United Parcel Serv., Inc., 499 F.Supp.2d 1035, 1041 (E.D.Tenn.2007); Cunningham v. Snap-On Tools Co., 2006 WL 1599825 at * 2 (S.D.Ill.2006); DePace v. Matsushita Elec. Corp., 257 F.Supp.2d 543, 572 (E.D.N.Y. 2003); Kishter v. Principal Life Ins. Co., 186 F.Supp.2d 438, 447 (S.D.N.Y.2002); Barnet v. Wainman, 830 F.Supp. 610, 613 (S.D.Fla.1993); MEBA Med., 867 So.2d at 1189-90; but see Perry v. P*I*E Nationwide, Inc., 872 F.2d 157, 162 (6th Cir. 1989); Kelly v. Blue Cross & Blue Shield of Rhode Island, 814 F.Supp. 220, 230 (D.R.I.1993).
However, the weight of authority also holds that where a plaintiff lacks standing under ERISA, ERISA cannot preempt his or her claim. Plaintiff cites Miller v. Rite Aid Corp., 504 F.3d 1102, 1106 (9th Cir. 2007), which plainly holds that:
ERISA does not preempt the claims of parties who do not have the right to sue under ERISA because they are neither participants in nor beneficiaries of an ERISA plan.
The defendants counter that Miller is "isolated." In fact, Miller is just the latest in a long, unbroken line of Ninth Circuit cases holding to the same effect. See, e.g., Concha v. London, 62 F.3d 1493, 1505 (9th Cir.1995); Curtis v. Nev. Bonding Corp., 53 F.3d 1023, 1027 (9th Cir.1995); Harris v. Provident Life & Accident Ins. Co., 26 F.3d 930, 934 (9th Cir.1994); Scott v. Gulf Oil Corp., 754 F.2d 1499, 1505-06 (9th Cir.1985). Moreover, we find authority from several other circuits (representing the clear weight of authority on the point) squarely behind the Ninth Circuit's view. See Gardner v. E.I. DuPont De Nemours & Co., 165 F.3d 18 (Table), 1998 WL 743669 (4th Cir.1998) (unreported decision); Weaver v. Employers Underwriters, Inc., 13 F.3d 172, 177 (5th Cir.1994); Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma, Inc., 944 F.2d 752, 756 (10th Cir.1991); Miara v. First Allmerica Fin. Life Ins. Co., 379 F.Supp.2d 20, 31 (D.Mass.2005); Glutzer v. Prudential Ins. Co. of America, 997 F.Supp. 1070, 1072 (N.D.Ill.1998); Madden v. Country Life Ins. Co., 835 F.Supp. 1081, 1087 (N.D.Ill.1993).
The contrary view can be attributed to only a few courts. See Butero, 174 F.3d at 1215; Young v. Reconstructive Orthopaedic Associates, II, P.C., 2005 WL 627796 at *12 (E.D.Pa.2005); Grover v. Central Benefits Nat'l Life Ins. Co., 876 F.Supp. 826, 830 (S.D.W.Va.1995); Urbino v. Pan Am. Life Ins. Co., 822 F.Supp. 1556, 1560 (S.D.Fla.1993); Pane v. Dandan, 763 F.Supp. 281, 283 (N.D.Ill.1991). Butero appears to be the only circuit court decision adhering to the minority view. And that decision does not squarely discuss the issue, as it merely holds in one part of the opinion that the plaintiff lacked standing and, in another part, that the claims were preempted. Nonetheless, we have to decide whether to follow the eleventh circuit in the face of contrary decisions from several other circuits. In Wylie v. Investment Management & Research, Inc., 629 So.2d 898 (Fla. 4th DCA 1993), we squarely addressed what to do in this situation, concluding:
In the end, the state court is very much like an Erie-bound federal court deciding uncertain state law; it must guess how the highest court is likely to decide the issue.
Id. at 900. We must therefore ponder how the United States Supreme Court would resolve this conflict among the circuits.
We begin by recalling our earlier discussion on complete preemption. As the *678 Eleventh Circuit recognized, standing is a necessary element of complete preemption. Cotton, 402 F.3d at 1281. We have difficulty understanding why standing is recognized as an essential element of complete preemption, but not deemed a necessary element for defensive preemption. We acknowledge that there is some question as to why standing matters at all, since precedent makes clear that the lack of an ERISA remedy does not matter to a preemption analysis. However, in Weaver, 13 F.3d at 177, the Fifth Circuit explained that, "[t]he claims by a non-participant and non-beneficiary to a plan do not affect the relationship between the traditional ERISA entities. Therefore, such claims are not preempted." This harkens back to the "relationship" prong of the Sixth Circuit test we discussed earlier. See Neusser, 810 F.2d at 555-56. In Hospice, the tenth circuit similarly explained:
However, we conclude that a state law claim which does not affect the "relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries, and the beneficiaries" as such is not preempted by ERISA.
944 F.2d at 756 (quoting Mem'l Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 249 (5th Cir.1990)). Here, once again, the "relationship" portion of the Sixth Circuit analysis is evoked. See also Mem'l Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 248-49 (5th Cir.1990) (holding that ERISA preemption did not extend to third-party providers, in part, because it had determined in a previous case that the most important factor for a court to consider in deciding whether a state law affects an employee benefit plan in too tenuous, remote or peripheral a manner is whether the state law "affects relations among ERISA's named entities").
In sum, we believe that the Supreme Court will ultimately follow the prevailing view and find that there is no ERISA preemption where there is no standing. Basing preemption on this "standing" principle has two virtues. First, in a highly complicated area, this is an easy line to drawno standing, no preemption. Second, several courts have noted that ERISA, which was designed to help those being denied benefits, has been subverted by its preemption provision, which perniciously takes away state law remedies which are the only remedies traditionally available. See Concha, 62 F.3d at 1505 (noting that ERISA was designed to protect employee pension rights but has stripped employees of most of the protection they enjoyed under state law); Miara, 379 F.Supp.2d at 29 (noting that ERISA has evolved into a shield of immunity against legitimate claims of the very people it was designed to protect).
In concluding that the plaintiff's action in this case does not relate to an ERISA plan and thus is not preempted by ERISA, we combine and follow three lines of authority: (a) the Sixth Circuit's three-part test in Neusser; (b) the Fourth Circuit's reasoning in Coyne that Congress did not intend to preempt traditional state-based laws of general applicability that do not implicate relations among traditional ERISA plan entities; and (c) the "standing" cases. Each of these strands independently and collectively leads us to conclude that the trial court erred in entering summary judgment based on its determination that plaintiff's common law negligence action was preempted by ERISA. We find all remaining arguments advanced by defendants to be without merit.
Affirmed in part, Reversed in part, and Remanded.
POLEN and FARMER, JJ., concur.